[No. 1183-2. Division Two. June 11, 1975.]

GENEVA A. MONJAY, *Respondent*, v. EVERGREEN SCHOOL DISTRICT No. 114, *Appellant*.

*William N. Church* and *Brian D. Leahy,* for appellant.

*Duane Lansverk* and *Landerholm, Memovich, Lansverk, Whitesides, Marsh, Morse & Wilkinson,* for respondent.

PEARSON, J.—This is an action to recover damages for personal injuries sustained by the plaintiff, Geneva Monjay, when the defendant's school bus struck her car.

Prior to trial, plaintiff entered into a covenant not to sue with General Motors Corporation and Ed Randall Chevrolet, the manufacturer and dealer of the school bus, respectively. Pursuant to that covenant, General Motors and Ed Randall Chevrolet agreed to pay the plaintiff $33,333 at the conclusion of the trial against the defendant school district. Plaintiff agreed to dismiss the covenanting defendants from the action, and agreed further that should she obtain a judgment against the school district, she would reimburse General Motors and Ed Randall Chevrolet in the amount recovered by her from the school district, to a maximum of $33,333. Plaintiff was also given the option of settling with the school district, and an alternative reimbursement formula was set out in the agreement. That formula provided that should plaintiff and the school district settle for less than $16,666, then General Motors and Ed Randall Chevrolet would match the amount of the settlement. Plaintiff would therefore have to settle for at least $11,111 in order to obtain compensation for her injuries in the amount of $33,333. If she could not procure such a settlement, then she would be compelled to litigate. She could not simply dismiss her case against the school district.[1]

The case proceeded to trial against Evergreen School District and a directed verdict was entered in plaintiff's favor. The jury assessed damages at $32,152.50.

On appeal, the school district argues that (1) the ques-

[1]See the full text of the covenant not to sue appended to this opinion.

tion of its negligence was one for the jury; or alternatively, (2) that the conditional reimbursement clause in the covenant not to sue should be stricken for reasons of policy, and that the amount which plaintiff received from General Motors and Ed Randall Chevrolet should be credited against the amount of the judgment entered against it, so that it owes plaintiff nothing.

We agree with the school district's first contention, and we partially agree with its second argument. We will first consider the propriety of the directed verdict.

The school district's defense to this action is that the accident was caused by a failure of the power braking system which had occurred despite the fact that it had adhered to a reasonable program of servicing and inspection. The driver of the bus testified that she had checked the brakes prior to leaving the garage. Some time prior to the accident, General Motors had serviced the brake system as part of a recall campaign. It also recalled buses of the same design subsequent to the accident, to lengthen the vacuum assist hose. Additionally, the bus was regularly serviced every 2,000 miles.

The bus driver stated that the accident occurred when she attempted to stop at a stop sign and the brakes suddenly gave out. She depressed the brake pedal several times, and it went all the way to the floor. She testified that just prior to the accident she had driven several blocks and had experienced no difficulty. This was the first time the driver had driven this particular bus.

Mr. Al Koons, the shop foreman for the school district, and an experienced mechanic, visited the scene shortly after the accident occurred. He found the vacuum assist hose disconnected from the power vacuum unit and the left front brake line severed. It was established at trial that the left front brake line became severed as a result of the accident. But it is the defendant's theory that the disconnected vacuum assist hose was the cause of the accident.

This case falls squarely within the rule announced in *Goldfarb v. Wright*, 1 Wn. App. 759, 463 P.2d 669 (1970).

There it was held that plaintiff has made a prima facie case when it is shown that the defendant failed to heed a traffic signal. If the defendant asserts brake failure as a defense, he has the burden of proving the reasons for the brake failure, so as to enable the jury to determine whether or not the defect was reasonably discoverable. A bare allegation or statement of brake failure is insufficient. *See Curtis v. Blacklaw*, 66 Wn.2d 484, 403 P.2d 358 (1965).

■ A directed verdict could only be held proper in this case if, after viewing the evidence in a light most favorable to the defendant, it can be said that there is no substantial evidence showing the cause of the brake failure. *See Shasky v. Burden*, 78 Wn.2d 193, 470 P.2d 544 (1970); *Amsbury v. Cowles Publishing Co.*, 76 Wn.2d 733, 458 P.2d 882 (1969); *Martin v. Huston*, 11 Wn. App. 294, 522 P.2d 192 (1974); *Goldfarb v. Wright, supra.*

Plaintiff argues that there was no substantial evidence that the disconnection of the vacuum assist hose was the cause of the brake failure, explaining that the failure of the power braking system would not cause a total brake failure because the mechanical braking system would still function. Witness Koons testified that the power failure would not cause the brake pedal to go all the way to the floor. Thus contends the plaintiff, the defendant's theory is wholly inconsistent with the driver's testimony that the brake pedal went all the way to the floor when she tried to stop.

But plaintiff overlooks Koons' statements that a driver who has never experienced a power brake failure might, in a crisis situation, have the sensation of the brake pedal going to the floor without a response. Koons testified that in his experience as a garage mechanic, he had customers who informed him that their brakes had totally failed when in fact only the power system had failed. He added that there would be a 75 percent loss of braking power with the failure of the power assist, and that the only way to stop a bus under such circumstances would be by "jumping" on the brake pedal.

In view of Koons' explanation of the inconsistency of defendant's theory with the driver's testimony, we find that there was substantial evidence that the brake failure resulted from a failure of the power assist which was caused by the disconnected vacuum assist hose. Accordingly, we hold the trial court erred in entering the directed verdict.

Defendant's second argument in this appeal is that the amount of plaintiff's judgment in this case should be diminished by the amount paid to the plaintiff by General Motors and Ed Randall Chevrolet pursuant to the covenant not to sue.

The pertinent provisions of this agreement stated:

> General Motors Corporation and Ed Randall Chevrolet Company agree to guarantee Monjay a recovery in her lawsuit arising out of the automobile-bus collision on April 17, 1970 of at least $33,333.34 (each guaranteeing ½ of said sum). General Motors Corporation and Ed Randall Chevrolet Company agree to pay said sum to Monjay *upon conclusion of the trial against Evergreen School District.*
>
> . . .
>
> If Monjay takes her case against Evergreen School District to trial and wins, Monjay agrees to repay General Motors Corporation and Ed Randall Chevrolet Company an amount equal to the recovery from Evergreen School District up to a total of $33,333.34 (to be paid within 15 days of payment from Evergreen School District), less out-of-pocket trial costs incurred by Monjay and less increased attorney's fees incurred by Monjay as a result of going to trial.

(Italics ours.) Another clause in the agreement declared that a release of Evergreen School District was not intended.

 It is of course axiomatic that a plaintiff cannot have a multiple recovery for a single wrong. Thus, if payment received by the plaintiff from one tort-feasor constitutes the full satisfaction of the obligation, he cannot thereafter proceed against the other tort-feasors.[2]

---

[2]The rules pertaining to releases and covenants not to sue have not been without confusion. The common-law rule that a release of one joint tort-feasor releases all operates regardless of whether the claim

A covenant not to sue will be treated as a release of all tort-feasors if reasonably compensatory consideration has been paid by one or more tort-feasors to the plaintiff. *Mills v. Inter Island Tel. Co.*, 68 Wn.2d 820, 829, 416 P.2d 115 (1966); *Hargreaves v. American Flyers Airline Corp.*, 6 Wn. App. 508, 494 P.2d 229 (1972). And in *Christianson v. Fayette R. Plumb, Inc.*, 7 Wn. App. 309, 499 P.2d 72 (1972) it was held that amounts paid by one joint tort-feasor pursuant to a covenant not to sue diminish the amount of plaintiff's claim against the remaining tort-feasors. It should be noted, however, that as yet there exists no right of contribution among joint tort-feasors in this state.

was fully satisfied by the release. But courts have been reluctant to strictly apply this rule when it is clear that the parties intended otherwise. *See* discussion in *Christianson v. Fayette R. Plumb, Inc.*, 7 Wn. App. 309, 499 P.2d 72 (1972). The rule has been limited to joint tort-feasors acting in concert, as opposed to concurrent or successive tort-feasors, unless payment made pursuant to the release was reasonably compensatory. *White Pass Co. v. St. John*, 71 Wn.2d 156, 427 P.2d 398 (1967); *DeNike v. Mowery*, 69 Wn.2d 357, 418 P.2d 1010 (1966); *Litts v. Pierce County*, 5 Wn. App. 531, 488 P.2d 785 (1971); *Gosse v. Swedish Hosp.*, 4 Wn. App. 574, 483 P.2d 147 (1971).

Moreover, parties have avoided the common-law rule by executing the covenant not to sue. Although there are basic legal differences between the release and the covenant not to sue (*see Haney v. Cheatham*, 8 Wn.2d 310, 111 P.2d 1003 (1941)), there are times when the covenant not to sue should be treated as a full release, such as when the payment made pursuant to the covenant is fully compensatory.

The Restatement of Torts § 885 (1939) has presented the following analysis, which was adopted by the Court of Appeals in *Christianson v. Fayette Plumb, Inc., supra* at 311:

(1) A valid release of one tortfeasor from liability for a harm, given by the injured person, discharges all others liable for the same harm, unless the parties to the release agree that the release shall not discharge the others and, if the release is embodied in a document, unless such agreement appears in the document.

(2) A covenant not to sue one tortfeasor for a harm does not discharge any other liable for the harm.

(3) Payments made by one tortfeasor on account of a harm for which he and another are each liable, diminish the amount of the claim against the other whether or not it was so agreed at the time of payment and whether the payment was made before or after judgment; the extent of the diminution is the amount of the payment made, or a greater amount if so agreed between the payor and the injured person.

*Deutsch v. West Coast Mach. Co.*, 80 Wn.2d 707, 497 P.2d 1311 (1972); *Rufener v. Scott*, 46 Wn.2d 240, 280 P.2d 253 (1955); *Duncan v. Judge*, 43 Wn.2d 836, 264 P.2d 865 (1953).

Defendant argues that fully compensatory consideration haš been paid on plaintiff's claim, pursuant to the terms of the covenant. In order to reach that conclusion, it would be necessary for us to strike the conditional repayment clause for reasons of policy, but uphold the remainder of the agreement so that plaintiff would be entitled to retain, without obligation, the $33,333 paid pursuant to the agreement. Although we agree with the school district's argument that the conditional repayment clause should be stricken on policy grounds, it does not necessarily follow that the school district should be able to totally shift liability back to General Motors and Ed Randall Chevrolet.

■ The few cases which have considered the validity of an agreement of this type (sometimes called loan agreements or loan receipts) have reached differing results.[3] We are particularly impressed, however, with the reasoning presented in *Bolton v. Ziegler*, 111 F. Supp. 516 (N.D. Iowa 1953). There the court considered Iowa law, which like Washington's allows no right of contribution among joint tort-feasors, but does permit a pro tanto reduction in liability based on amounts paid pursuant to a covenant not to sue. The court found the loan agreement to be totally re-

---

[3]*Compare Western Spring Serv. Co. v. Andrew*, 229 F. 2d 413 (10th Cir. 1956); *Biven v. Charlie's Hobby Shop*, 500 S.W.2d 597 (Ky. Ct. App. 1973); *Klukas v. Yount*, 121 Ind. App. 160, 98 N.E. 2d 227 (1951) (upholding the validity of such agreements) *with Bolton v. Ziegler*, 111 F. Supp. 516 (N.D. Iowa 1953); *Panhandle Gravel Co. v. Wilson*, 248 S.W.2d 779 (Tex. Civ. App. 1952) (voiding the agreement). *See also*, 16 R. Anderson, *Couch on Insurance* § 60:2 (2d ed. 1966).

The type of agreement at issue in the instant case should be distinguished from the "loan receipt" agreement in which the plaintiff's insurer advances money to the plaintiff which is to be repaid in the event of plaintiff's recovery against third parties. This latter type of agreement has been upheld in almost all the cases. *See Clow v. National Indem. Co.*, 54 Wn.2d 198, 339 P.2d 82 (1959), and *Bolton v. Ziegler*, 111 F. Supp. 516 (N.D. Iowa 1953) (which contains an exhaustive resume of such decisions).

pugnant to the principle of pro tanto reduction attendant to the covenant not to sue. The court reasoned that the principle of pro tanto reduction was founded upon sound reasons of policy, and that such policy should not be thwarted by a loan agreement which effectively results in an indemnity or contribution to which the covenanting tort-feasors would not otherwise be entitled.

We also believe that the use of this device has a potentially coercive effect that should not be countenanced by the judiciary. This would be particularly true in a situation in which the liability of the settling defendant is relatively clear, while the liability of the litigating defendant is not. The more culpable defendant is in a position to force the less culpable defendant to either litigate, and risk the possibility of bearing the burden of the entire judgment, or settle—thus coercing a contribution. While it is the policy of the law to encourage settlements, this policy should not be applied to the detriment of possibly innocent parties.

There is yet an additional feature of the subject covenant which we find disturbing. It amounts to nothing more than an agreement between two concurrent tort-feasors to conditionally pay an injured plaintiff a stated sum if he pursues his claim against a third concurrent tort-feasor. It is not merely a covenant by the plaintiff *not* to sue the two defendant covenantors, but it affirmatively requires plaintiff to sue the defendant school district alone. No payment is to be made until the conclusion of the trial against the school district. It is our opinion that this agreement contains strong overtones of champerty which we cannot sanction.

For the reasons thus given, we are compelled to hold that the conditional repayment clause in this covenant is void and of no effect. Defendant's argument is then that the remainder of the agreement should stand, and that it should be held that the plaintiff is not obligated to repay the $33,333 to General Motors and Ed Randall Chevrolet. In order to consider this argument, it should be determined whether or not the striking of this illegal provision destroys

the essence of the entire agreement. *See Rathke v. Yakima Valley Grape Growers Ass'n*, 30 Wn.2d 486, 192 P.2d 349 (1948); 17 Am. Jur. 2d *Contracts* § 230 (1964). We are concerned, however, about ruling on this issue and disposing of the plaintiff's rights concerning General Motors and Ed Randall Chevrolet when the latter are not parties to this appeal. We believe, therefore, that the proper solution to this matter is to grant the plaintiff the option of rescinding the entire agreement or affirming it, absent the conditional repayment clause. If plaintiff elects the former alternative, she would have to restore the $33,333 to General Motors and Ed Randall Chevrolet. If, on the other hand, she elects to affirm the covenant (minus the conditional repayment clause) then, because the judgment against the school district was less than $33,333, the school district's obligation to the plaintiff would be discharged. This opinion should not be read as affecting any of General Motors' or Ed Randall Chevrolet's rights with respect to the covenant.

The case is remanded with instructions to enter a satisfaction of judgment within 30 days of the remittitur, unless plaintiff files proof with the court that the monies received pursuant to the covenant not to sue have been returned to General Motors and Ed Randall Chevrolet. If said monies are returned, the judgment entered is reversed and a new trial granted on plaintiff's action against the defendant, Evergreen School District.

ARMSTRONG, C.J., and PETRIE, J., concur.

Petition for rehearing denied July 29, 1975.

Review denied by Supreme Court September 23, 1975.

APPENDIX

COVENANT NOT TO SUE

THIS AGREEMENT is made between GENEVA A. MONJAY, GENERAL MOTORS CORPORATION and ED RANDALL CHEVROLET COMPANY.

1. DECLARATIONS

1.1 Monjay has filed a lawsuit in Clark County Superior Court against General Motors Corporation, Evergreen School District No. 114,

and Ed Randall Chevrolet Company as a result of an automobile-bus collision on April 17, 1970 in which Monjay was severely and permanently injured.

1.2 Monjay, General Motors Corporation and Ed Randall Chevrolet Company wish to enter into a covenant not to sue without releasing any claim Monjay may have against Evergreen School District No. 114.

1.3 Monjay, General Motors Corporation and Ed Randall Chevrolet Company agree the sums payable hereunder are not compensatory for the damages sustained by Monjay; it being considered by the parties hereto Monjay's case has a value in excess of $74,000.00.

1.4 Monjay was injured when Evergreen School District's bus failed to stop at a stop sign and struck her car. The bus was manufactured by General Motors Corporation and sold to Evergreen School District No. 114 by Ed Randall Chevrolet Company. The bus driver claims the brakes on the bus failed. Diligent investigation by all parties to this agreement indicates the most probable cause of the collision was negligence on the part of Evergreen School District. However, this case would be extremely expensive to defend on the part of General Motors Corporation and Ed Randall Chevrolet Company, and they recognize they would be considered target defendants by many jurors which might lead to their being found liable on a minimum of evidence. It further appears even if something were wrong with the brakes on the bus, which General Motors Corporation and Ed Randall Chevrolet Company expressly deny, the accident still resulted from the negligence of Evergreen School District in one or more of the following particulars:

(a) By reason of the driver's failure to stop for the stop sign.

(b) By reason of the driver's failure to apply the brakes soon enough to stop the bus for the stop sign.

(c) In failing to properly maintain the bus.

1.5 There is no intent by General Motors Corporation and Ed Randall Chevrolet Company to benefit Evergreen School District No. 114, but the sole intent is that this agreement should redound to the benefit of Monjay, General Motors Corporation and Ed Randall Chevrolet Company. The parties hereto specifically intend Evergreen School District No. 114 should not be a third party beneficiary of this agreement.

1.6 This agreement is being made for the sole benefit of the parties hereto under the sound policy of the law favoring the settlement of litigation, which policy would be greatly impaired if Evergreen School District were to receive any benefit of any kind whatsoever.

1.7 The compensation guaranteed hereunder is primarily for the purpose of avoidance by General Motors Corporation and Ed Randall Chevrolet Company of the uncertainties, burdens, and inconvenience of this litigation and the tremendous expenses attendant thereto, and secondarily, as a guarantee of partial compensation for injuries and damages sustained by Monjay.

1.8 Monjay expressly reserves all rights of action, claims and demands, against Evergreen School District No. 114.

1.9 Monjay, General Motors Corporation and Ed Randall Chevrolet Company agree this agreement and covenant not to sue cannot be pled, proven or introduced into evidence by Evergreen School District No. 114 or any person other than General Motors Corporation and Ed Randall Chevrolet Company as a defense of any action brought by Monjay, her heirs or assigns.

In light of the foregoing, it is hereby agreed as follows:

2. COVENANTS

2.1 General Motors Corporation and Ed Randall Chevrolet Company agree to guarantee Monjay a recovery in her lawsuit arising out of the automobile-bus collision on April 17, 1970 of at least $33,333.34 (each guaranteeing ½ of said sum). General Motors Corporation and Ed Randall Chevrolet Company agree to pay said sum to Monjay upon conclusion of the trial against Evergreen School District.

2.2 If Monjay settles her case with Evergreen School District for less than $16,666.67, the obligation of General Motors Corporation and Ed Randall Chevrolet Company is each reduced to the amount of the settlement with Evergreen School District—so as to provide a result whereby each of the three original defendants in the lawsuit pay an equal share of the total settlement. If Monjay settles her case with Evergreen School District for $16,666.67 or more, the full guarantee provided in paragraph 2.1 applies (but General Motors Corporation and Ed Randall Chevrolet Company have no responsibility to pay any increased sum).

2.3 If Monjay takes her case against Evergreen School District to trial and wins, Monjay agrees to repay General Motors Corporation and Ed Randall Chevrolet Company an amount equal to the recovery from Evergreen School District up to a total of $33,333.34 (to be paid within 15 days of payment from Evergreen School District), less out-of-pocket trial costs incurred by Monjay and less increased attorney's fees incurred by Monjay as a result of going to trial.

2.4 In consideration of the foregoing agreement Monjay covenants and agrees with General Motors Corporation and Ed Randall Chevrolet Company, she will never by reason of any matter or cause whatsoever heretofore occurring institute or maintain or continue any suit or action against General Motors Corporation and Ed Randall Chevrolet Company, nor will she institute, prosecute or in any way aid in the prosecution of any claim, demand, action, or cause of action for damages, costs, loss of service, expenses for compensation for or on account of any damages, loss or injury as to the person or property or both, whether developed or undeveloped, known or unknown, which Monjay may have against General Motors Corporation and Ed Randall Chevrolet Company arising in any way out of the automobile-car collision in Clark County, Washington, on April 17, 1970.

2.5 This agreement shall be binding on the heirs, personal representatives and assigns of each party hereto.

Dated this 30th day of April, 1973.

/s/ Geneva A. Monjay

Geneva A. Monjay
GENERAL MOTORS CORPORATION
By: /s/ Frank E. Day

ED RANDALL CHEVROLET COMPANY
By: /s/ Charles E. Gallup

/s/ Duane Lansverk

Landerholm, Memovich, Lansverk,
Whitesides, Marsh, Morse & Wilkinson
of Counsel for plaintiff

/s/ Frank E. Day

Frank Day of Counsel for General
Motors Corporation

/s/ Charles E. Gallup

Charles Gallup of counsel for
Ed Randall Chevrolet Company