Ana Luisa CASTILLO Vda Perdomo and Isabel Castillo Bello, Administratrixes, Inheritors and Surviving next of kin of the Estates of Dr. Romulo Terrero, Deceased and Hilda Castillo Vda Terrero, Deceased, Avenida Marquis del Toro, Quinta Ana Luisa, San Bernadino, Caracas, Venezuela

**and**

Edward R. Murphy, Administrator of the Estate of Dr. Romulo Terrero, Deceased and Hilda Castillo Vda Terrero, Deceased,

v.

**ROGER CONSTRUCTION COMPANY et al.**

v.

**KOHLER CO. (Third-party Defendant).**

Appeal of David T. FRIEDMAN and Edith Friedman, Individually as husband and wife and Roger Construction Company, and Edward Fernberger (two cases).

Romelia Aldrey deSANZ, Administratrix of the Estates of Iris Romelia O'Brien deTerrero, Romulo Antonio Terrero O'Brien and Iris Margarita Terrero O'Brien, Deceased, and Romelia Aldrey deSanz in her capacity as sole inheritor and surviving next of kin of Iris Romelia O'Brien deTerrero, Romulo Antonio Terrero O'Brien and Iris Margarita Terrero O'Brien, Deceased

v.

**ROGER CONSTRUCTION CO., et al.**

v.

**KOHLER CO. (Third-party Defendant.)**

Nos. 76–2324, 76–2325.

United States Court of Appeals, Third Circuit.

Argued May 2, 1977.

Decided Aug. 8, 1977.

---

Daniel J. Ryan, Kean K. McDonald, La-Brum & Doak, Philadelphia, Pa., for appellants.

Mark A. Welge, T. E. Byrne, Jr., Krusen, Evans & Byrne, Philadelphia, Pa., for appellees.

## OPINION OF THE COURT

Before GIBBONS and HUNTER, Circuit Judges, and LAYTON,* District Judge.

GIBBONS, Circuit Judge.

In this diversity appeal we revisit the Pennsylvania joint tortfeasor release issues which concerned us in *Mazer v. Security Insurance Group,* 507 F.2d 1338 (3d Cir. 1975) (en banc) (Mazer III) and *Griffin v. United States,* 500 F.2d 1059 (3d Cir. 1974). Because we conclude that the District Court misapplied the Pennsylvania law set forth in those cases and in relevant Pennsylvania court decisions, we reverse.

### I.

On August 1, 1970, Dr. Romulo Terrero, his wife, two children, and his mother died in their apartment at the Manoa Park Apartments in Haverford Township, Pennsylvania, as a result of the inhalation of carbon monoxide fumes. The fumes were emitted from the exhaust pipe of a gas-powered emergency electrical generator serving the apartments. The generator was activated automatically when an electrical storm caused a power failure in the area. It should have, but did not, shut off

---

* Caleb R. Layton, 3rd, United States District Judge for the District of Delaware, sitting by designation.

when power was restored and continued to operate until its fuel supply was depleted. The exhaust pipe should have been vented to the outside of the building, but the vent was covered with earth, and the discharged carbon monoxide accumulated in the building, causing the death of the sleeping Terrero family. The administrators of the decedents brought suit:

(1) against the "Friedman interests:"

   (a) Mrs. Edith Friedman, the owner of the apartments; (b) Roger Construction Company, which built them; (c) David Friedman (Edith's husband), a principal in Roger Construction Company; and (d) Edward Fernberger, construction superintendent for Roger Construction Company in the erection of the building.

(2) against the "subcontractor interests:"

   (a) Anthony S. Bohem, an electrical contractor; (b) Louis D'Anjollel, a plumbing and heating contractor; (c) Main Line Construction Company, Inc., which performed grading and filling at the site; (d) Zenith Automatic Controls, which manufactured the allegedly malfunctioning shut-off switch; and (e) Maris Equipment Company and Rose Electric Company, suppliers of the switch and generator.

Various of the defendants filed a third party complaint against Kohler Company, the manufacturer of the generator. The Friedman interests filed a crossclaim for contribution and indemnity against the other defendants. The plaintiffs' theory of liability was that the apartments were negligently constructed and maintained, and that various components of the emergency generator system were defective and unreasonably dangerous.

## II.

In June 1974, after the pleadings were closed and discovery completed, the insurance carriers for the Friedman interests reached a settlement with the plaintiffs in which for the payment of $500,000.00 the plaintiffs discharged all claims against them. As a part of the settlement the plaintiffs executed a joint tortfeasor release, as quoted in the margin,[1] which described the accident and the pending lawsuit and provided: (a) that the payment is made only on behalf of those defendants among the Friedman interests later shown to have been liable for the deaths; (b) that if other persons are later shown to be liable, the release inures to their benefit to the extent of their relative pro rata share of the common liability; (c) that the plaintiffs would satisfy any liability of the Friedman interests for contribution to other persons;

---

1. (a) ". . . [I]t is further understood that the payment herein made of $500,000 is made only on behalf of those persons, firms or corporations later shown to have been liable as aforesaid and not on behalf of any of the parties as to whom later proceedings demonstrate that no liability existed.

     \*    \*    \*    \*    \*    \*

(b) "In the event that it is determined that other persons, firms or corporations were tortfeasors or guilty of liability producing conduct with respect to the death of plaintiffs' decedents, the execution of this release shall operate as a satisfaction of the claims of plaintiffs against such other persons, firms or corporations to the extent of the relative pro rata share of common liability of the persons herein released; to wit, all insureds of the aforesaid insurance carrier who are shown to have been negligent or guilty of liability producing conduct towards plaintiffs and plaintiffs' decedents.

(c) "If it should appear or be adjudicated in any suit, action or proceeding, however, that the persons herein released, to wit, those insured[s] . . . shown to have been negligent . . . and others were guilty of joint negligence which caused the injuries and death of plaintiffs' decedents and their losses and damages, in order to save the said persons released harmless, we, as further consideration will satisfy any decree, judgment or award in which there is such finding or adjudication involving said persons released on their behalf and to the extent of their liability for contribution . . . .

(d) "The parties herein released reserve the right to seek contribution from any and/or all other persons, firms and corporations who may have been negligent or guilty of liability producing conduct to the extent that the payment herein made exceeds the pro rata share of liability of said persons released."

and (d) that the Friedman interests reserve the right to seek contribution from other persons who may have been negligent to the extent that the $500,000 payment exceeds the pro rata share of liability of persons in that group on whose behalf it was made.

This partial settlement left pending the plaintiffs' claims against the subcontractor interests, the claims of those interests against Kohler Company, and the Friedman interests' crossclaims for contribution and indemnity. Thereafter, in settlement negotiations in which counsel for the Friedman interests were not participants, the plaintiffs and the remaining defendants reached a settlement in which plaintiffs executed a general release running to all defendants, including the Friedman interests, for a recited total consideration of $760,000.00, broken down as follows:

| | |
|---|---|
| Friedman interests | $500,000 |
| Zenith | 100,000 |
| Main Line | 20,000 |
| Rose | 5,000 |
| Maris Equipment Company | 5,000 |
| Kohler Company | 27,500 |
| D'Anjollel | 20,000 |
| Bohem | 82,500 |
| Total | $760,000 |

Thus the final settlement with the plaintiffs acknowledged that the insurance carrier for the Friedman interests had paid $500,000 of a total possible joint liability of $760,000. The Friedman crossclaim was, of course, still pending. The attorney for their insurance carriers filed an amended crossclaim reciting the above facts, and demanding judgment by way of contribution

from the subcontractor interests and Kohler in such amount that each settling party would have paid an equal pro rata share of the total settlement. Those defendants filed a motion to dismiss the amended crossclaim for failure to state a claim upon which relief can be granted. The district court granted the motion, and this appeal followed.

## III.

The District Court, attempting to predict how the Pennsylvania courts would construe its Contribution Among Tortfeasors Act, 12 P.S. §§ 2082–89, concluded that when the first defendant to settle obtains a joint tortfeasor release rather than a general release, his right to contribution under the Act is inchoate and can only ripen by virtue of a judgment against the second defendant in a suit in which the plaintiff remains a party, establishing that the first defendant's contribution conferred a benefit on the second joint tortfeasor. In reaching this conclusion, the court distinguished several Pennsylvania cases construing the Act, but did not discuss this Court's prediction of Pennsylvania's construction in *Mazer III* and *Griffin, supra*. Neither of those cases, nor any in Pennsylvania to which our attention has been called, is on all fours with the instant case, but as we will point out hereafter, analysis of the available case law leads us to conclude that the District Court misconstrued the Act.

The relevant statutory sections are 12 P.S. §§ 2082, 2083, 2085 and 2086, quoted in the margin.[2] The first section

---

2. § 2082. *Joint tortfeasors defined*

For the purpose of this act, the term "joint tortfeasors" means two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them.

§ 2083. *Right of contribution*

(1) The right of contribution exists among joint tortfeasors; (2) A joint tortfeasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his pro rata share thereof; (3) A joint tortfeasor who enters into a settlement with the injured person is not entitled to recover contribution from another

joint tortfeasor whose liability to the injured person is not extinguished by the settlement.

§ 2085. *Release, effect as to other tortfeasors*

A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides, but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid.

§ 2086. *Liability to make contribution as affected by release*

A release by the injured person of one joint tortfeasor does not relieve him from liability to

defines joint tortfeasors, the next creates the statutory right of contribution, the third covers the effect of a release by the injured party of one of several tortfeasors, and the last defines the liability of a joint tortfeasor to make contribution to another who has obtained a release. It is clear from the explicit language of § 2082 that the status of joint tortfeasor does not depend on the recovery of a judgment against all or some of them. It is also clear from § 2085 that a plaintiff can release one joint tortfeasor without giving up his claim against another. However, by virtue of that section the plaintiff's total claim is reduced by the consideration paid. There is no right to a judgment of contribution under § 2083 until the tortfeasor seeking it has "by payment discharged the common liability or . . . paid more than his pro rata share thereof." The language which is the source of the District Court's difficulty, and ours as well, is the third clause in § 2083:

> "[A] joint tortfeasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tortfeasor whose liability to the injured party is not extinguished by the settlement."

There is an internal ambiguity in § 2083, for the second disjunctive clause says that contribution is available both when the common liability has been "discharged" and when more than a pro rata share has been paid. Section 2083(3) seems to qualify the pro rata share provision by requiring that liability be "extinguished." One possible reading of the section, essentially that adopted by the District Court, is that the second clause refers to payments after judgment while the third applies to payments before judgment. On that reading, no joint tortfeasor who made a settlement before judgment would be entitled to contribution unless he obtained from the victim a general release. While that is a plausible interpretation of an ambiguous statute, it is not the interpretation of the Pennsylvania cases.

In *Mong v. Hershberger,* 200 Pa.Super. 68, 186 A.2d 427, *allocatur refused* (1963), Mong, one of two joint tortfeasors, prior to judgment settled with the victim for $13,-000, obtaining a release providing that the claims against all tortfeasors were reduced to the extent of Mong's pro rata share. The victim proceeded to judgment against the other tortfeasor, Hershberger, and obtained a judgment for $11,720.99. The Pennsylvania Supreme Court held, in *Daugherty v. Hershberger,* 386 Pa. 367, 126 A.2d 730 (1956), that Hershberger was entitled to a credit against his pro rata share of the judgment for all that Mong had paid in excess of Mong's pro rata share. Thus, against $5,860.50 Hershberger received a credit of $4,021.23. When Mong sued Hershberger for this amount the court of Common Pleas, adopting the construction of § 2083 suggested above, granted judgment on the pleadings. The Pennsylvania Superior Court reversed, directing the entry of judgment for $4,021.23. It rejected the contention that "extinguished" meant total extinguishment by a general release, pointing out that § 2083 must be read *in pari materia* with § 2085. That section provides that the victim's release "reduces the claim against the other tortfeasors in the amount of the consideration paid . . . or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid." The court reasoned:

> "Section 2 [§ 2083] and section 4 [§ 2085] recognize the right to contribution when one pays more than his share; and although the third provision of section 2, when given a strict interpretation might lead to the conclusion that in cases of settlement, unless there is a complete extinguishment of the claims against the other tortfeasor, the right to contribution does not exist. We do not believe the Legislature intended such a strict mean-

make contribution to another tortfeasor, unless the release is given before the right of the other tortfeasor to secure a money judgment for contribution has accrued and provides for a reduc-

tion to the extent of the pro rata share of the released tortfeasor of the injured person's damages recoverable against all the other tortfeasors.

ing." 200 Pa.Super. at 72, 186 A.2d at 429.

Recognizing that *Mong v. Hershberger* precluded a construction of § 2083 that would bar a pre-judgment settling joint tortfeasor from contribution unless he obtained a general release, the District Court distinguished that case because Hershberger had been determined by judgment to be a tortfeasor, and the judgment fixed the total damages.

That is indeed a distinction from the instant case, but it is a distinction of no significance under the Pennsylvania Act, which in § 2082 defines "joint tortfeasors" as persons jointly or severally liable "whether or not judgment has been recovered against all or some of them." There is no requirement that there be a *judicial* determination that any among the tortfeasors is liable to the victim or that the victim must be a party to a judicial determination of damages. *Swartz v. Sunderland*, 403 Pa. 222, 169 A.2d 289 (1961) was a separate action for contribution by a settling tortfeasor against another. Neither had ever been adjudicated liable to the victim. The court expressly rejected the contention that the entry of judgment against either was the exclusive foundation of a right to seek contribution. The Pennsylvania Supreme Court observed:

> "[N]or will the appellee or other joint tortfeasors who will be called upon to discharge their equitable responsibilities be prejudiced by the fact that judgment has not first been entered in favor of the injured party. They will still have their day in court with full opportunity to *defend against liability and the reasonableness* of the amount paid in settlement of the existing claim. On the other hand, if the position asserted by the appellee is sustained, substantial prejudice would result to well-intending individuals wishing to right their wrongs as quickly and fairly as possible. The Uniform Act intends that a case involving joint tortfeasors may be fully heard on the merits, without regard to the position of any of the parties as original defendants or otherwise." 403 Pa. at 226, 169 A.2d at 291. (Emphasis in original; footnote omitted).

The Friedman interests' amended crossclaim is identical for all practical purposes to the separate action in *Swartz v. Sunderland*. The District Court distinguished it, however, on the ground that in *Swartz* the plaintiff seeking contribution had obtained a general release. Recognizing that *Swartz* disposed of the argument that there must be a judicial determination of liability in favor of the victim, the court read into the third clause of § 2083 a new requirement that "the extinguishment condition requires that the settling party must confer a real and direct benefit upon the nonsettling parties." It proceeded to hold that the benefit was not "real and direct" unless there was a general release, as in *Swartz*, or a judicial determination of the fact and amount of liability, as in *Mong v. Hershberger*. In any other case the benefit would be "speculative" rather than real and direct. As an exercise in distinguishing cases this was ingenious. But *Mong* holds that a general release is not required, and *Swartz* holds that a judicial determination of the fact and amount of liability is not required. Moreover *Swartz* explicitly contemplates litigation in the contribution action over the non-settling tortfeasor's liability to the victim and over the reasonableness of the first payment. There would not, of course, be litigation over whether, liability having been established, the first settlement conferred a benefit, for the rule of apportionment in contribution actions is equal shares. 9 Uniform Laws Annotated at 159; *cf. Mong v. Hershberger, supra.* This case does not involve the effect on the equal shares rule of § 2 of Act No. 152, approved July 9, 1976, and effective September 7, 1976, which applies the rule of comparative negligence to tort actions. And in the instant case, had it gone forward, there would not have been litigation over the reasonableness of the settlement, since the defendants from whom contribution was sought established that in their own settlement. Before the crossclaim defendants settled, only $500,000 had been paid to plaintiffs. It was these defendants who, in settling,

raised the total figure to $760,000. It is difficult to understand why they should be allowed to contest the reasonableness of the sum they fixed by their settlement, at least where they did not in the second settlement reserve the right to contest the reasonableness of the first. But whether on remand crossclaim defendants will be able to offer reasons why some or all of them should be free to litigate the reasonableness of the settlement is a question we need not now resolve.

In *Mazer v. Security Insurance Group, supra,* and *Griffin v. United States, supra,* this court held that the status of a settling party could, for purposes of § 2085, be established not only by a judgment but also by a provision in a joint tortfeasor release in which the injured party acknowledges (as was done in the release obtained by the Friedman interests) that in any lawsuit the verdict will be reduced to the extent agreed upon. *Mazer* and *Griffin* establish only that the payment from the Friedman interests was in satisfaction of tort liability rather than from volunteers. *See Mazer v. Security Insurance Group, supra,* 507 F.2d at 1342. If the status of the first payment, for the purpose of reducing the victim's recovery, can be reliably established by means of the form of the settlement, there is, as a general proposition, no reason why the same should not be true of the second payment. In a proper case, the settlement agreement itself could serve as proof of tortfeasor status. However, in this case, the general release obtained by the crossclaim defendants stated:

"We understand said Payers, by reason of agreeing to this compromise payment, neither admit nor deny liability of any sort, and the said Payers have made no agreement or promise to do or omit to do any act or thing not herein set forth and we further understand that this release is made as a compromise to avoid expense and to terminate all controversy and/or claims for injuries, deaths or damages of whatsoever nature, known or unknown, including future developments thereof, in any way growing out of or connected with said accident.

We admit that no representation of fact or opinion has been made by the said Payers or anyone on their behalf to induce this compromise and that the sum paid is solely by way of compromise of a disputed claim, and it is therefore specifically agreed that this release shall be a complete bar to all claims or suits for injuries, deaths or damages of whatsoever nature resulting or to result from said accident."

These paragraphs establish that liability has not been admitted. Thus, on remand, the Friedman interests will have the burden of proving the tort liability of the crossclaim defendants. The provision for a "complete bar to all claims or suits" does not affect their right to pursue a crossclaim, for the bar of the general release operates between the victims and tortfeasors and not among the tortfeasor class *inter sese.*

■ The District Court supported its result by making two assumptions, first that the purpose of the Uniform Contribution Among Tortfeasors Act was to encourage settlements, and second that any other interpretation would discourage them. We do not doubt that the public policy of Pennsylvania is to encourage settlements of personal injury and death actions for at least two reasons. The primary reason is that a settlement is the fastest way to get money into the hands of a victim of tortious conduct. Emphasizing that primary reason the Supreme Court of Pennsylvania declined in the *Swartz* case to construe the Contribution Act in a way that would result in "substantial prejudice to well-intentioned individuals wishing to right their wrongs as quickly and fairly as possible." 403 Pa. at 226, 169 A.2d at 291. But prejudice is precisely the result accomplished by the District Court's interpretation of the statute. Practically speaking, insurance carriers will be precluded from settling early in multiparty cases unless all settle or a general release can be obtained by one. Often it will be impossible for one carrier to obtain a general release, if for no other reason than that its policy limits are too low. Such a carrier would be forced to stay in the case

or suffer the risk that the remaining carriers, by settling later, could deprive it of the right to seek contribution. The District Court, concentrating on the possibility of settling the claims against the remaining defendants, disregarded the negative effects its rule would have on getting some reparation funds into the hands of victims early on. *Swartz v. Sunderland, supra,* stresses that consideration.

A secondary reason for the public policy favoring settlements obviously is the desire to reduce the burden on and expense of maintaining courts. The District Court appears to have concentrated on this secondary reason in its construction of the Contribution Act. But if the Pennsylvania legislative intention in enacting the Act was to give large consideration to that factor rather than to the desire to achieve equity between persons each partially responsible for injury or death, the Pennsylvania courts would not have decided *Mong* and *Swartz* as they did. We cannot reject their identification of the legislative policies behind the Act. Moreover, the District Court's conclusion that its construction of § 2083 generally would facilitate settlements is based on no empirical information and is highly speculative. It is not all clear, even in this case, that the ultimate settlement could have been achieved absent the fact that the insurance carriers for the Friedman interests paid $500,000 and removed themselves from the case as targets for the plaintiffs. It is at least not unlikely that the subcontractor defendants became more tractable when it became apparent plaintiffs would at trial be concentrating their efforts on them.

The judgment appealed from will be reversed and the case remanded for further proceedings consistent with this opinion.