**Jerry N. SLAUGHTER, A Minor By and Through His Father and Next Friend James Slaughter**

v.

**PENNSYLVANIA X–RAY CORPORATION and John J. Geiger**

v.

**DELCO GENERAL TRUCK SALES CO., INC.; International Harvester Co.; Suburban Truck Sales, Inc.; Fort Recovery Industries; Grief Bros. Corporation; Ryder Truck Rental Systems, Inc.; Duralite Body Company, Inc.**

**Appeal of DELCO GENERAL TRUCK SALES CO., INC.**

No. 80–1564.

United States Court of Appeals, Third Circuit.

Argued Oct. 14, 1980.

Decided Jan. 15, 1981.

---

Theodore H. Lunine (argued) Philadelphia, Pa.; William T. Campbell, Jr., Swartz, Campbell & Detweiler, Philadelphia, Pa., for appellant Delco General Truck Sales Co., Inc.

Joseph F. Moore, Jr. (argued), J. Kurt Straub, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellee International Harvester Co.

George Sheehan, Jr. (argued), Donald J. P. Sweeney, McWilliams & Sweeney, Philadelphia, Pa., for appellee Pennsylvania X-Ray Corp.

Alfred Sarowitz, Philadelphia, Pa., for appellee John J. Geiger.

H. M. Girsh, Steinberg & Girsh, Philadelphia, Pa., for appellee Ryder Truck Rental Systems, Inc.

Arthur G. Raynes, Raynes, McCarty & Binder, Philadelphia, Pa., for Jerry N. Slaughter, etc., et al.

Before HUNTER and WEIS, Circuit Judges and FISHER,* District Judge.

## OPINION OF THE COURT

WEIS, Circuit Judge.

Because it had insufficient insurance coverage to pay the plaintiff a reasonable settlement, the target defendant in this diversity personal injury suit "borrowed" money from one of several alleged joint tortfeasors. Repayment was conditioned upon the defendant's recovery of contribution from other tortfeasors. Rejecting a contention that the "loan" was in fact a settlement payment, the district court allowed recoupment. In addition, the court held that a recently enacted comparative negligence statute was not applicable in a contribution suit where the underlying tort occurred before the statute's effective date. We agree with both rulings and affirm.

Plaintiff Jerry Slaughter was struck and severely injured by a truck. He brought suit against its owner, Pennsylvania X-Ray Corp., and driver, John Geiger, X-Ray's employee. X-Ray then joined a number of entities as third-party defendants on allegations that their conduct contributed to the accident. The plaintiff's claim was settled in full by payment to him of $1,500,000 by X-Ray. International Harvester, one of the third-party defendants, advanced $400,000 to X-Ray under an arrangement the parties termed a "loan receipt." The case proceeded to trial on X-Ray's third-party complaint for contribution and various cross-claims filed by the third-party defendants. X-Ray admitted its negligence, and the jury determined that only one of the third-party defendants, Delco General Truck Sales Co., was also liable. Judgment was then entered in favor of X-Ray against Delco for $750,000, one-half the total amount paid to settle the plaintiff's claim. After its post-trial motions were denied, Delco took this appeal.

The plaintiff received extensive injuries when struck by X-Ray's truck as it went out of control after a hydraulic brake line ruptured. X-Ray's investigation revealed that highly corrosive chemicals carried in the vehicle on a regular basis leaked through the truck bed and onto the brake line causing it to corrode. International Harvester had sold the used truck to X-Ray, and Delco had performed a required state safety inspection four months before the accident. X-Ray alleged that both of these companies, and others absolved by the jury, had a part in the brake failure.

In the course of pretrial proceedings, it became obvious that the plaintiff, an innocent victim, was undoubtedly entitled to a large award. All of the parties agreed that one and one half million dollars was a reasonable settlement, but the defendants were unable to allocate responsibility for payment among themselves. X-Ray then agreed to settle the claim in full, taking a release that absolved all defendants of liability to the plaintiff but preserved X-Ray's contribution claims against them.

Because its liability insurance limits were $400,000 short of the settlement amount, X-Ray "borrowed" that sum from International Harvester without interest. X-Ray agreed to reimburse International Harvester by sharing any awards on the contribution claims to a maximum of $400,000. If totally unsuccessful, X-Ray would not have been required to repay the loan, and if recovery was inadequate to fully satisfy the debt, International Harvester agreed to forgive the remainder. Each party waived all other claims against the other.

At trial, testimony divulged the terms of the settlement with the plaintiff and the arrangement between International Harvester and X-Ray. In answers to special interrogatories, the jury found that Delco had been negligent but that the other third-party defendants, including International Harvester, were not responsible for Slaughter's injuries.

* Honorable Clarkson S. Fisher, Chief Judge, United States District Court for the District of New Jersey, sitting by designation.

Relying on Pennsylvania's recently enacted comparative negligence statute, Delco argued that its liability for contribution should be limited to the percentage of causal negligence the jury assessed against it—12.5%. The district court ruled that since the accident occurred one year before the comparative negligence statute became effective, it did not apply. Consequently, the court entered judgment against Delco for $750,000, one-half the total settlement.

On appeal, Delco argues that it should benefit from the $400,000 loan because it was, in effect, a settlement payment by International Harvester. Delco also renews its contention that comparative negligence principles should govern a contribution claim arising out of a settlement made after that statute's effective date. In addition, Delco argues that the admission of evidence bearing on the loan agreement was unduly limited, that the proof of negligence against it was insufficient, and that a new trial should be granted on its cross-claim against International Harvester.

## I

In 1951 Pennsylvania adopted the Uniform Contribution Among Tortfeasors Act, 42 Pa.Cons.Stat.Ann. §§ 8321–8327 (Purdon 1980 Pamphlet), an act designed "to establish generally the existence of the right of contribution among joint tortfeasors and to provide the procedure whereby that right might be made effective in practice." *Swartz v. Sunderland*, 403 Pa. 222, 225, 169 A.2d 289, 291 (1961).[1] Under the Act, a settling joint tortfeasor who extinguishes the liability of another joint tortfeasor to the injured person is entitled to seek contribution. 42 Pa.Cons.Stat.Ann. § 8324(c); *Swartz v. Sunderland, supra.*

In order to recover, a settling party must:
(1) be a tortfeasor;
(2) establish joint liability with another; and
(3) have extinguished the liability of the other joint tortfeasor to the injured party.

42 Pa.Cons.Stat.Ann. §§ 8322, 8324(c). In other words, the fact that a person paid money to settle the claim of an injured party is not a sufficient basis for recovery; the joint tortfeasor relationship must also be established. Thus, if the payor is not a tortfeasor, his payment would be that of a volunteer and would not support a claim for contribution. In this case, therefore, as a prerequisite to recovery, it was necessary for Pennsylvania X-Ray to concede its own negligence, which it did in counsel's opening to the jury.

Since the pretrial investigation apparently developed sufficient information to convince X-Ray that it would be found liable in any event, it was the logical party to lead the settlement negotiations. The problem, however, was that although all parties agreed on the total settlement figure, X-Ray needed $400,000 to supplement its insurance coverage.

International Harvester insisted (correctly as it turned out) that it was not liable. Nevertheless, in view of the plaintiff's extremely serious injuries, it recognized the risk that the jurors might hold it and other third party defendants liable. If it paid directly into the settlement fund, any contribution claim would have to be based on the theory that although negligent, International Harvester had paid more than its pro rata share. Direct participation carried with it an admission of liability insofar as a contribution claim was concerned. Exculpation by the jury would not produce a refund, since the verdict would merely establish that International Harvester was a volunteer, not a joint tortfeasor. Thus, there was no way that International Harvester could participate directly in a settlement and recoup its money if the jury found no liability.

These were the reasons underlying International Harvester's and X-Ray's decision to employ a loan transaction. The parties have termed it a "loan receipt," an arrangement used in some states where contribu-

1. *See generally* Thomas F. Weis, An Analysis of The Pennsylvania Uniform Contribution Among Tortfeasors Act of 1951, 13 U.Pitt.L. Rev. 390 (1952).

tion among joint tortfeasors is not permitted. The label is not determinative, and it is the substance of the transaction that must be analyzed.[2]

■ Delco argues that the loan arrangement was merely an attempt to circumvent the Uniform Contribution Among Tortfeasors Act and, in that context, should not be considered as anything other than a payment toward settlement. Delco asserts that there is no case law in Pennsylvania or other states that casts light on the validity of such agreements among tortfeasors. Our task, therefore, in this *Erie* setting,[3] is to predict what course the Pennsylvania Supreme Court would follow if it were presented with this issue.

We start with the fact that without the loan arrangement the settlement would not have occurred. Thus, the plaintiff, an innocent victim, would have been compelled to wait years to receive compensation because of the defendants' inability to prophesy how a jury would allocate responsibility for the injury. Even the most astute and experienced defense lawyers will admit that it is often impossible to make such a prediction. In hindsight, it can be said that there was some basis for Delco's optimism because its culpability, as found by the jury, was substantially less than X-Ray's. But just as school boys often say, "a miss is as good as a mile," partial liability is liability nonetheless.

On a public policy basis, the arguments against the loan arrangement lack persuasiveness. Pennsylvania and other states encourage settlements, *Castillo v. Roger Construction Co.*, 560 F.2d 1146, 1152–53 (3d Cir. 1977) (applying Pennsylvania law), and obstructions to the process are not favorably regarded. To accept Delco's argument would close the door on a settlement method that allows participation by defendants unwilling to admit liability but not adverse to contributing if given the opportunity to recoup in the event of a favorable liability verdict.

Delco argues that the arrangement confused and misled the jury. It is true that despite its benefits, the settlement agreement changed the adversary posture among the various defendants. X-Ray no longer was interested in establishing the liability of International Harvester or the truck driver. But somewhat similar circumstances arise in the more routine case where the plaintiff settles his claim against one defendant but continues to press the claim against a nonsettling defendant. Yet, this is permitted under the Uniform Contribution Among Tortfeasors Act. *See* 42 Pa. Cons.Stat.Ann. § 8326.

If a partial settlement occurs during trial, the jury may indeed wonder why the plaintiff suddenly seems to lose interest in pursuing his claim against one defendant and shifts his fire to the other. Yet Pennsylvania cases hold that even though he has

2. "Loan receipt" agreements are generally utilized in two distinct situations. One is an arrangement between a plaintiff and his insurer, in which the insurer advances money to the plaintiff who agrees to reimburse it out of any recovery against third-parties. *See e. g., See v. Emhart Corp.*, 444 F.Supp. 71 (W.D.Mo.1977). Transactions of this type are generally upheld. *See Monjay v. Evergreen School Dist. No. 114*, 13 Wash.App. 654, 660 n.3, 537 P.2d 825, 829 n.3 (1975); *Bolton v. Ziegler*, 111 F.Supp. 516, 527-31 (N.D.Iowa 1953).

The second is typified by a line of cases discussing loan agreements between a plaintiff, on the one hand, and one or more, but not all, codefendants and their insurers on the other. *See, e. g., State v. Ingram*, 399 N.E.2d 808 (Ind.App.1980); *Barlage v. The Place, Inc.*, 277 N.W.2d 193 (Minn.1980); and *Monjay v. Evergreen School Dist. No. 114, supra.* The majori-

ty of courts uphold this arrangement as well, but several jurisdictions have struck it down as violating the rule prohibiting contribution among joint tortfeasors, undermining the adversarial nature of the action against nonassenting defendants, or violating various other public policies. *See* Annot., 62 A.L.R.3d 1111 (1975).

These two situations must be distinguished from each other, *see* McKay, Loan Agreement: A Settlement Device That Deserves Close Scrutiny, 10 Val.L.Rev. 231, 232 (1976), just as each must be distinguished from the present situation, involving, as it does, a challenge to an arrangement between two, but not all, codefendants in a state that permits contribution among joint tortfeasors.

3. *Erie R. R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

settled with the plaintiff and obtained a pro rata release, a defendant must nevertheless participate in the trial so that the jury may determine the issue of joint or sole liability. *See Davis v. Miller*, 385 Pa. 348, 123 A.2d 422 (1956). In that situation, as a general rule, the existence of a pro rata release is not disclosed to the jury.

In this case, however, the parties stipulated that the loan transaction would be disclosed together with the fact that the plaintiff's claim had been settled. The jury, therefore, was fully informed and could intelligently weigh the competing interests and biases. We find nothing to indicate that the factfinders were confused by the proceedings, nor was there any unfairness in the explanation of the loan transaction that would require its invalidation.

Delco also contends that the jury may not have grasped the subtleties involved in the fact that the truck driver did not participate in the payment to the plaintiff and did not admit negligence. The trial judge reviewed the issues underlying each of the interrogatories submitted to the jury. He explained to the jurors that all parties conceded the hydraulic lines ruptured and any negligence on the part of the driver rested on whether he had timely warning that there may have been something wrong with the brakes. At Delco's request, the trial judge also charged that the truck's speed could be considered. These issues were not complicated, and since the jury was required to pass on the liability of each of the defendants in separate interrogatories, the matters for decision were presented forthrightly and in an uncomplicated manner. We find nothing in the record to demonstrate that the answers to the special interrogatories were the result of anything but the credible evidence submitted to the jury.

Finally, we do not accept the argument that the loan receipt arrangement was in derogation of the Uniform Contribution Among Tortfeasors Act. That statute was enacted to facilitate settlements, particularly in cases where one or more tortfeasors are willing to recognize the injured party's claim. *Swartz v. Sunderland, supra* at 225, 169 A.2d at 291. In the case at hand, however, International Harvester's unwillingness to admit liability made these statutory provisions an inadequate vehicle for settlement. By making payment to the innocent plaintiff possible, the loan transaction acted not to frustrate the Act, but to complement it and carry out its purposes. Accordingly, we reject the challenges to the loan arrangement between X-Ray and International Harvester.

## II

As an alternative argument, Delco contends that it should not be liable for 50% of the settlement, but only for a lesser amount based on the jury's finding of 12.5% negligence. Under the Uniform Contribution Among Tortfeasors Act, "[a] joint tortfeasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his pro rata share thereof." 42 Pa.Cons.Stat.Ann. § 8324(b). The general rule for determining the extent of liability under this section has been that all co-obligors must contribute equally in discharging their common obligation.

In 1978 Pennsylvania adopted a comparative negligence statute. 42 Pa.Cons.Stat. Ann. § 7102 (Purdon 1980 Pamphlet). The parties agree that this statute impliedly amends the Uniform Contribution Among Tortfeasors Act so that the measure of contribution is to be determined on a comparative fault basis in proportion to the percentage of negligence attributable to each defendant.[4] Delco argues that this implied amendment applies here.

In *Costa v. Lair*, 241 Pa.Super. 517, 363 A.2d 1313 (1976), the Pennsylvania Superior Court decided that only plaintiffs injured after the effective date of the comparative negligence statute would be permitted to invoke it. The court held that retroactive

---

4. *See* Griffiths, Hemsley, and Burr, Contribution, Indemnity, Settlements, and Releases: What the Pennsylvania Comparative Negligence Statute Did Not Say, 24 Vill.L.Rev. 494, 496 (1978–1979); Timby, Comparative Negligence, 48 Pa.B.A.Q. 219, 232 (1977).

application of the statute would "affect the legal character of past actions in a substantive, rather than a procedural, manner." 241 Pa.Super. at 520 n.4, 363 A.2d at 1315 n.4. It also quoted with approval a case holding that Oregon's comparative negligence statute could not be applied retroactively because a party's liability is determined with reference to the time of the accident and not, in the absence of an expressed intent to that effect, at the time of later legislation. *Joseph v. Lowery,* 261 Or. 545, 551–52, 495 P.2d 273, 276 (1972). *See also Brescia v. Ireland Coffee-Tea Co.,* 412 F.Supp. 488 (E.D.Pa.1976).

Delco does not dispute this holding and concedes that if the Slaughter claim had gone to trial, comparative negligence principles would not have applied even among defendants. It argues, however, that contribution is separate and distinct from the underlying tort and that the settlement and execution of the general release, which did not occur until the comparative negligence statute was in effect, established the contribution claim. As Delco sees it, then, the law in effect at the time the claim for contribution came into existence applies.

A major portion of Delco's argument focuses on the Pennsylvania Supreme Court's decision in *Smith v. Fenner,* 399 Pa. 633, 161 A.2d 150 (1960). In *Smith,* the court held that the Uniform Contribution Among Tortfeasors Act governed the effect of a pro rata release executed after the Act's passage but arising out of a tort that occurred beforehand. In reaching this conclusion, however, the court relied on the principle that " '[r]etrospective laws may be supported when they impair no contract and disturb no vested right, but only vary remedies, cure defects in proceedings otherwise fair, and do not vary existing obligations contrary to their situation when entered into and when prosecuted.' " 399 Pa. at 641, 161 A.2d at 154. The specific holding was that the release did not absolve the remaining joint tortfeasors, as would have been true before passage of the Uniform Act. The court observed that the Act did not disturb any substantive right of the defendants, and the change accomplished by the legislation was procedural only. It did not increase what would have been the liability of any one or all of the tortfeasors at the time the tort claim arose. 399 Pa. 641–42, 161 A.2d 154–55.

Delco's argument requires it to rely upon and, at the same time, distinguish *Smith v. Fenner.* In essence, Delco wants to retain the favorable result reached there, but avoid the retroactivity rationale employed by the court. To accomplish this, it argues that the pro rata release involved in *Smith* did not extinguish the common liability of the other joint tortfeasors and, therefore, did not wholly terminate the plaintiff's claim based upon the underlying tort. Here, in contrast, the execution of a general release terminated all of the plaintiff's tort claims and, Delco argues, gave rise to a new cause of action that came into existence after the effective date of the comparative negligence statute.

We find Delco's argument unpersuasive. We acknowledge that the right to contribution is of a different nature and separate from the tort action out of which it arose. But that principle does not rest on the distinction between a pro rata release and a general one. Joint or *several liability* is created at the time of the tortious injury, not by subsequent events. The time when the entitlement to contribution comes into being is when the common liability of the tortfeasors to the claimant is extinguished. But the time when that common liability was created was when the tort was committed. Thus, it is the law in effect at the moment of the injury that delineates the responsibilities of the tortfeasors among themselves.

We therefore do not agree that Delco's liability for the injury should be reduced because of the comparative negligence statute enacted after the tort occurred. Nothing in the legislation or decisional law supports that conclusion, and the trial court properly entered judgment for one-half the settlement.

We have reviewed the other contentions raised by Delco, and find no reversible er-

ror. Accordingly, we will affirm the judgment of the district court.