## Gordon v. Great Atlantic & Pacific Tea Co., Appellant.

*Contracts—Releases for injuries caused by negligence—Fraud—Evidence of fraud—Case for jury.*

1. Where in a common law action the attempt is not to alter or contradict a written instrument but to overcome it wholly and set it aside, the testimony of a single witness covering the point in controversy, no matter that it be contradicted by many opposing witnesses, requires a submission of the question of fact so raised to the jury.

2. When means are employed to lead one not to read an instrument which he is about to sign and to deceive him as to its purpose so that he is not afforded a fair opportunity for examination, the case does not fall within the rule that he who signs without reading when he can do so or can have it done for him will not be heard to say that he was ignorant of the contents of the paper so executed.

3. Where an alleged release of liability for injuries caused by negligence has been fraudulently obtained the fact that the money paid at the time of its execution has not been returned is not sufficient to bar the plaintiff's right to recover; the money in such case is retained, not as part of the consideration of a contract denied, but as a part indemnity for fraud perpetrated; there is no admission that the money so received was the consideration for a contract and there is consequently no obligation to return it.

4. In an action of trespass to recover damages for personal in-

juries admittedly caused by the negligence of the defendant, defendant offered in evidence a writing in the form of a release purporting to acquit and discharge the defendant from all damages or liability in consideration of $150 paid to plaintiff at the time when the release was obtained. Plaintiff contended that the release had been fraudulently procured, and offered evidence that after an operation necessitated by his injuries he was subject to attacks of epilepsy and vertigo, whereby his mind was enfeebled; that on the day when he signed the release he went to defendant's office in a fainting condition and asked for water, which was given him; that he showed his wound to defendant's manager who stated he was going to give plaintiff money to put him over the holidays, but that he wanted plaintiff to sign a paper as a mere form to send it to the president of the company to let him know what he did with the money and that this was done with former employees who had been injured; that the word "release" was not mentioned at any time; that plaintiff never knew that he was signing a release; that he was taken to the bank, the paper was pushed at him with the written part folded under, that he was asked to sign it, was told by the notary to hurry up, did sign it, and that it was then delivered to the manager, who paid plaintiff $115.00 and told him to go and buy an overcoat. Expert witnesses testified that plaintiff was "a little queer" mentally and that he had epilepsy which could have resulted from some irritation of the brain; that he was not mentally sound subsequent to the act and before, after, and at the time of the execution of the release. *Held*, the evidence was sufficient to justify a finding that plaintiff was deceived into the execution of the alleged release.

Argued Oct. 28, 1913. Appeal, No. 170, Oct. T., 1913, by defendant, from judgment of C. P. Allegheny Co., June T., 1910, No. 249, on verdict for plaintiff in case of John J. Gordon v. The Great Atlantic & Pacific Tea Company. Before FELL, C. J., BROWN, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before REID, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $1,750 and judgment thereon. Defendant appealed.

*Errors assigned* were in refusing to direct a verdict for defendant and to enter judgment for defendant n. o. v.

*B. H. Pettes,* of *Pettes, Tyrrell & Bracken,* for appellant.

*Joseph F. Mayhugh,* with him *Ralph J. Brown,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, January 5, 1914:

The plaintiff was injured by the negligence of the defendant corporation; he sued and recovered a verdict, upon which judgment was entered. This appeal is by the defendant, which contends that a writing in the form of a release, put in evidence at the trial, constituted an absolute bar to the plaintiff's claim, and that binding instructions should have been given in its favor. The issue as to whether or not the alleged release had been secured by fraud was submitted to the jury, and they found that it had; upon this subject the court below states: "The defendant produced at the trial a release which purported to acquit and discharge it from all damages or liability for the accident, the ostensible consideration for which was the sum of $150, paid to the plaintiff at the time it was obtained. It was undoubtedly signed by the plaintiff, is in form what the defendant claims it to be, and plaintiff received and spent the money and has not refunded or offered to refund any part of it. The plaintiff, however, sought to avoid the effect of this release by presenting evidence of his enfeebled condition,......his epileptic attacks, his state of need which was appealed to, the winning of his confidence by defendant's manager, the statement of the latter that he was making the payment as a gratuity, the fact that the word release was never mentioned; and, finally, that the document was placed before him, signa-

ture line exposed, with the rest of the paper folded back, and that the notary hurried his execution of the paper ......We must consider some of the facts......, to determine whether there was any ground for the submission of the question of the release to the jury. The accident happened January 20, 1910. The patient went to the hospital and was operated on by removing a button of bone perhaps a half an inch in diameter over the tender area (in the head) discovered after the fall. There was no fracture—simply a depression. The patient 'seemed a little queer mentally,' and this helped to induce the operating physicians to open the skull. This was on October 11, 1910, or nine months after the accident. The plaintiff had returned to work a few days after the mishap, and then had been treated by physicians from January 23d to October 11, 1910. One physician treated him at different times for impaired hearing and vertigo—the latter being very marked, accompanied by an unsteady gait. He saw him in a comatose condition after one of his epileptic fits. Another physician actually treated him for epilepsy, and there seems to be no question as to the frequent recurrence of attacks of that disease from the time of the accident on. Plaintiff testified that he had them as frequently as five in one day. On the day he went to the office of defendant, where the release was signed, his head was yet bandaged, the wound caused by the trephining not having healed,—although he had left the hospital without being discharged as cured sometime before. On November 21, 1910, when the release was signed, he testified that he was going to the hospital to have the head dressed and was suffering pain. He said he went to the office of defendant's counsel at the request of defendant's manager, and at that office was told to go to defendant's place of business. That Mr. Bray, defendant's manager, had come to his home in Wilkinsburg the day before to ask him to go to the office of defendant's attorney. He testified that on going to defendant's office

he was in a fainting condition, and asked for a drink of water, which was given him. That he was there about twenty minutes, during which Mr. Cunningham, the manager of the downtown store asked him to show the wound in his head, which he did, the manager saying it was very bad. That he asked who kept plaintiff and was told his sister, who washed for a living; that he asked if plaintiff had an overcoat and plaintiff was finally told 'that he was going to give me money to put me over the holidays, but he wanted me to sign a paper just as a mere form to send it to the president of the company to let him know what he did with the money; that they done this with former employees who had been injured.' Plaintiff further testified that 'release' was not mentioned at any time; not a word said as to what the paper was—and that he never knew that he was signing a release. His testimony was not distinct that at any time he asked what the paper was, asked to read it himself or to have it read to him. He merely says as to the actual execution that he was taken to a bank, the paper pushed at him with the written part folded under, asked to sign it, told by the notary to hurry up, did sign it, and it was then delivered to Cunningham, who paid him the $115 and told him to go and buy an overcoat."

The foregoing statement of facts, which is supported by the notes of testimony, bears a striking similarity to Clayton v. Consolidated Traction Co., 204 Pa. 536, and brings the case in hand squarely within the principle of that authority; in which we held the evidence sufficient to take the issue of fraud to the jury. The principal difference between the two cases is in favor of the one at bar; for here we have the additional element of the mentally enfeebled condition of the plaintiff, which was not present in the Clayton case. (Also see, Ettinger v. Jones, 139 Pa. 218). The doctors called by the plaintiff testified that he was "a little queer mentally," that he had "epilepsy" which could have resulted from "some irritation of the brain," that he "was not mentally

sound,"—one at least going so far as to state that in his opinion the plaintiff was of unsound mind. The testimony in question covered the mental condition of the plaintiff subsequent to the accident, and before, after and at the time of the execution of the release; it was at least sufficient to justify the belief that this man's mind was so enfeebled at the time he signed the paper that he could readily have been made the dupe of designing persons, and, together with the other evidence in the case, was ample to sustain a finding that he was deceived and defrauded into the execution of the alleged release.

This is not an effort to reform a writing, but to set it aside, practically, upon the ground that, so far as the plaintiff is concerned, it in fact never existed; and we have said that, "where in a common law action the attempt is not to alter or contradict a written instrument, but to overcome it wholly and set it aside, the testimony of a single witness covering the point in controversy, no matter that it be contradicted by many opposing witnesses, requires a submission of the question of fact so raised to the jury": Spitzer v. Pa. R. R. Co., 226 Pa. 166, 169. The evidence depended upon at bar clearly meets the requirements of the rule that such testimony must be "clear, precise and indubitable": Clayton v. Traction Co., 204 Pa. 536, 540; and the fact that the plaintiff did not read or require the paper to be read to him cannot be given any binding effect in this case. When means are employed to lead one not to read an instrument which he is about to sign and to deceive him as to its purport, so that he is not afforded a fair opportunity for examination, the case does not fall within the rule that he who signs without reading when he can do so or can have it done for him will not be heard to say that he is ignorant of the contents of a paper so executed: Clayton v. Traction Co., 204 Pa. 536. Furthermore, since the alleged release was fraudulently obtained, the fact that the money paid at the time of its execution had not been returned, was not sufficient to

bar the plaintiff's right of recovery. "Where there is a disaffirmance of the contract because of fraud, the injured party may, in some cases, bring his action without repaying, or offering to repay, the money received on the fraudulent contract. In such case, the money is retained, not as a part of the consideration of a contract he denies, but as a part indemnity for fraud perpetrated on him. As he was deceived into accepting it by a falsehood or fraud, there is no admission that it was a consideration for a contract, and there is, consequently, no obligation on him to return it": Gibson v. R. R. Co., 164 Pa. 142, 155; the present case is governed by this principle. Also see, St. Louis, I. M. & S. Ry. Co. v. Smith, 100 S. W. Repr. 884, 888; St. L., I. M. & S. Ry. Co. v. Sandidge, 99 S. W. Repr. 68; Hayes v. R. R. Co., 143 N. C. 125, 128, 129.

The cases relied upon by the defendant are to be distinguished upon the ground that they are instances of efforts to reform rather than to set aside a written instrument, or, when of the latter class, that they lack either the element of fraud or of mental enfeeblement; in some of them both of these elements were entirely absent, and in others, where alleged to be present, the evidence depended upon was too slight to justify its submission to the jury.

The assignments are overruled and the judgment is affirmed.