# Vanormer *v.* Osborn Machine Co., Appellant.

*Negligence—Master and servant—Steel company—Molding—Explosion—Vice-principal—Foreman—Act of June 10, 1907, P. L. 523 —Contributory negligence—Assumption of risk—Damages—Failure to secure medical attention—Release—Fraud—Case for jury.*

1. In an action by an employee against a steel company to recover damages for personal injuries resulting from the explosion of a casting covered with sand, over which plaintiff was pouring molten iron, under the direction of a foreman, the case is for the jury and a verdict for the plaintiff will be sustained where it appeared that the sand had not been properly warmed for the reception of the molten iron, rendering the operation dangerous, and

causing the accident, and that plaintiff had inquired of the foreman and had been informed that the sand had been warmed and that everything was all right.

2. In such case, where it appeared that the foreman had general charge of the molding room with power to employ and discharge workmen, he was a vice-principal charged with the duty of providing a safe place to work for defendant's employees, and under the Act of June 10, 1907, P. L. 523, his act in ordering the plaintiff to pour the casting could not be held to be the act of a fellow servant, as he was a person within the meaning of the act to whose order the employee was bound to conform and did conform and was injured in consequence.

3. In such case the foreman having informed plaintiff that everything was all right, the latter cannot as a matter of law be held guilty of contributory negligence in standing where he might be hurt by an explosion.

4. In such case whether plaintiff assumed the risk of his position was for the jury.

5. In such case where plaintiff's eyes were damaged by the explosion and he was advised to have one eye removed, after it had become blind, in the hope of saving the other eye, but this was not done promptly so that ultimately both eyes were lost, the question whether he was entitled to recover for the loss of both eyes was properly submitted to the jury, in the absence of definite and clear evidence that earlier removal would have saved the second eye, under instructions that it was plaintiff's duty after the accident to do what a reasonable and prudent man would have done under like circumstances to alleviate his condition and mitigate the damages, and that his failure to do so would relieve the defendant from all additional damages resulting therefrom.

6. In such case the validity of a release discharging defendant from all damages occasioned by the accident in consideration of the payment of money, was properly submitted to the jury, where there was evidence, although contradicted, that plaintiff had been induced to sign the release by the fraud of an agent of the insurance company, who falsely pretended to have received a message from plaintiff's physician as to the extent of his injuries.

7. In such case the amount of the judgment was reduced by the amount paid at the time the release was given.

Argued April 19, 1916. Appeal, No. 61, Jan. T., 1916, by defendant, from judgment of C. P. Clearfield Co., Sept. T., 1915, No. 197, on verdict for plaintiff, in case of Dale C. Vanormer v. Osborn Machine Company. Before

BROWN, C. J., MESTREZAT, POTTER, FRAZER and WALLING, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before BELL, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $5,000 and judgment thereon. Defendant appealed.

*Errors assigned* were instructions to the jury, answers to points, the refusal of the court to direct a verdict for defendant and to enter judgment for defendant n. o. v,

*J. A. Gleason,* with him *W. H. Patterson, W. C. Pentz* and *John Pentz,* for appellant.

*A. L. Cole,* with him *H. B. Hartswick* and *John C. Arnold,* for appellee.

OPINION BY MR. JUSTICE WALLING, July 1, 1916:

Plaintiff, while employed by defendant as a molder on October 28, 1913, was injured by the explosion of a casting, which he was burning.

To save a defective casting it is subjected to a process called "burning," which is done by bedding the casting in molding sand and leaving a hole or opening at the top into which molten iron is poured, so as to fill and cure defects in the casting. It was the custom for each molder to burn the defective castings which he had previously made. However, on said day the foreman in charge of the molding room had bedded five or six defective castings, supposed to have been theretofore made by plaintiff, and, as the latter was pouring the molten metal into and upon one of said castings, it exploded and such metal was thrown into his face, by which he was burned and permanently injured.

In the process of bedding the casting it seems the sand is dampened so it will pack; and safe practice requires

that it be warmed and dried by placing a hot iron across the opening or hole at the top, otherwise an explosion is likely to occur when the hot metal strikes it.

Plaintiff testified in effect that the foreman directed him to burn the castings and that he asked the foreman if they were all right, and the foreman said, "Yes, go ahead;" and that he did so with the result above stated. This conversation was denied by the foreman, but the jury believed plaintiff.

The evidence tends to show that dampness or cold is the cause for such an explosion. There was no proof that this casting had been dried or warmed, or that the foreman had any information that such had been done. It was properly for the jury to decide whether the lack of such precaution, if they found there was such lack, was the cause of the accident. Plaintiff was using a ladle with a handle some four feet long, but his face at the time was near to and above the hole into which he was pouring the metal. Both plaintiff and the foreman knew that another employee had sprinkled water around or near this casting, but it does not appear that plaintiff knew it had not been properly warmed.

Plaintiff's right eye was superficially burned, but seemed to recover, while the left eye was burned so seriously as to soon result in total blindness therein. After which the attending specialist advised its removal, to prevent sympathetic inflammation of the other eye, which was not promptly done and inflammation of the right eye developed. Then the left eye was removed but the right lost its sight, so plaintiff is totally blind. There was some expert evidence, not very definite, that an earlier removal of the left eye would probably have saved the other. The learned trial judge very fully and clearly instructed the jury to the effect that it was plaintiff's duty after the accident to do what a reasonable and prudent man would have done under like circumstances to alleviate his condition and mitigate the damages, and

that his failure to do so would relieve the defendant from all additional damages resulting therefrom.

The defendant carried liability insurance in the Casualty Company of America; and, on March 18, 1914, the adjuster of said company in consideration of $1,150.00, and some doctor bills and other expenses, secured from plaintiff a release in full, discharging and acquitting defendant from all further liability on account of the accident; which release was signed, acknowledged and sworn to by plaintiff and his wife, and was a complete prima facie defense to this action. However, plaintiff had not then lost the sight of his right eye, and plaintiff and his wife testify that such release was secured through the fraud of the adjuster; in that he then and there in his office in Pittsburgh in their presence pretended to have a telephone conversation with Dr. Weill, an eminent specialist of that city, in which he quoted the doctor, who had just examined plaintiff, as saying that plaintiff's right eye would come out all right, and that he would soon be able to resume his work, and that plaintiff gave the release relying thereon, when in fact the adjuster had at that time no telephone conversation with Dr. Weill, and was never told by him that plaintiff's right eye would come out all right. The adjuster and two other witnesses, then present in his office, flatly contradict the testimony of Mr. and Mrs. Vanormer and say that there was no such pretended telephone conversation with Dr. Weill whatever.

Plaintiff never returned or offered to return the $1,150.00. The court declined defendant's request for binding instructions and fairly submitted the disputed questions of fact to the jury, who found for plaintiff.

The foreman had general charge of the molding room with power to employ and discharge workmen and was a vice-principal, and his statement to plaintiff, as found by the jury, that the castings were all right to go ahead, was in our opinion properly considered as the statement of a vice-principal and not of a fellow servant, whatever

may have been the character of his act in bedding the castings. It was his duty, representing the defendant, to provide plaintiff a reasonably safe place in which to work, and it was for the jury to say whether he was at fault in assuring plaintiff the place was safe when in fact it was not, and when he had no information that proper precautions had been taken to make it safe. Defendant's negligence was for the jury.

Plaintiff's duty was obedience and in the absence of any information to the contrary he could rely on the assurance of the foreman; and under the Act of June 10, 1907, P. L. 523 (Sec. 1), "the negligence of any person to whose orders the employee was bound to conform, and did conform, and, by reason of his having conformed .thereto, the injury or death resulted" is no defense.

If the foreman had just informed plaintiff that everything was all right, we cannot say as a matter of law that he was guilty of contributory negligence in standing where he might be hurt by an explosion. It was necessary for him to be where he could do the work and see what he was doing. Whether he exposed himself unnecessarily to danger was a question of fact and as such submitted to the jury.

We are not satisfied that this is a case where the. employee undertook the performance of work that was obviously and immediately dangerous, or voluntarily exposed himself to known danger, or recklessly placed himself in a perilous position. None of the cases cited seem to be parallel with this.

Whether plaintiff's left eye should have been removed at an earlier date, and the probable effect .thereof, were matters peculiarly for the consideration of the jury.

If the release was secured by fraud plaintiff could maintain this suit without repayment of the consideration for which it was given: Gordon v. Great Atl. & Pac. Tea Co., 243 Pa. 330.

And whether it was so secured was under the evidence a question for the jury: Ettinger v. Jones, 139 Pa. 218;

Clayton v. Consolidated Traction Co., 204 Pa. 536; Gordon v. Great Atl. & Pac. Tea Co., supra.

However to prevent any possible injustice we direct said $1,150.00 to be credited upon the judgment, as of the date of the verdict, and the assignments of error are overruled and the judgment as so modified is affirmed.