## Lucas, Appellant, *v.* Gibson.

Argued March 28, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

428

*George I. Bloom,* of *Bloom & Bloom,* for appellant.

*H. Russell Stahlman,* for appellee.

OPINION BY MR. JUSTICE STERN, April 14, 1941:

Two automobiles collided head on. Defendant was the operator of one, and plaintiff a passenger in the other, which was owned and driven by her son-in-law, Paul Blazevich. As a defense to the action to recover damages for plaintiff's injuries defendant produced a release signed by a mark and purporting to have been acknowledged by plaintiff. Testimony was offered on both sides in regard to its execution. The court held that the evidence presented on behalf of plaintiff to avoid the release was not clear, precise and indubitable, and accordingly gave binding instructions for defendant. Plaintiff appeals.

The ruling of the court, in our opinion, indicates a misapprehension of both the factual and the legal situation.

Eleven days after the accident plaintiff's daughter and son-in-law, Mr. and Mrs. Paul Blazevich, met Max W. Dickey, an agent of the company in which defendant carried liability insurance, and discussed with him the adjustment of their claims which arose from the fact that their car was damaged and some of their children were injured in the collision. Dickey was not willing to settle with them unless a release was also

obtained from plaintiff. He filled in the blanks of a release form, leaving open only the amount of the consideration, and gave the paper to Blazevich, or to one John F. Wall who was present, to have it executed by plaintiff. There is disagreement—and this constitutes the fundamental issue of fact in the case—as to the amount which Dickey promised to pay in settlement of plaintiff's claim, Dickey testifying that it was to be only the amount of her hospital and doctors' bills, whereas Mr. and Mrs. Blazevich claimed that plaintiff was to be compensated, in addition, for her injuries. There is also a dispute as to the persons who went to secure plaintiff's signature to the release; Wall and Mrs. Blazevich made up two of the party and there would seem to be little doubt that Paul Blazevich also went along, but there is a question as to whether a Miss Victoria Kaufman, who was a notary public, was present.

Of whatever persons the group consisted, they found plaintiff, who was fifty-three years of age, in a ward at the hospital with other patients in the same room. She had suffered severe, permanent injuries,—multiple lacerations about the face, internal injuries, shock, a fracture of the middle third of the left femur, several teeth broken and others knocked out. The leg fracture was badly comminuted; a pin had been driven through the fragments and the leg, which was in a cast, was extended up in the air by a pulley with weights upon it; a bandage covered her right eye, and her left eye was swollen. She had been taking sedatives to relieve her pain. According to the testimony of Mr. and Mrs. Blazevich, the latter explained to plaintiff, in the Slovak language, that the insurance company wanted her to put her mark on the paper presented to her so that the company could pay the hospital and doctors' bills, and after she came out of the hospital the company would settle with her for her injuries. This testimony was not substantially disputed, for Wall admitted that he

did not understand what Mrs. Blazevich told her mother, and Miss Kaufman merely testified that she could recall only that Mrs. Blazevich explained to plaintiff that all her bills would be paid by the insurance company and did not "remember any other part of the conversation." According to Wall, the talk between Mrs. Blazevich and her mother lasted but "a minute or so." A nurse raised plaintiff partly up in bed, Mrs. Blazevich supported her arm, plaintiff touched her hand to a pen which was held and moved by Wall, and in this way a mark was made on the release. Miss Kaufman, whose presence on the occasion is disputed, testified that she then added the words "Caroline Lucas her mark", took plaintiff's acknowledgment, and affixed her notarial seal; there is, however, much reason to suspect that the certificate of acknowledgment was not placed upon the release at the hospital but at some later time. In addition to Wall there appears as a witness the name of one Irene Pressburger; defendant admits that this person was not present at the hospital but committed the extremely reprehensible act of pretending, by her subsequent signature, to have witnessed the making of the mark.

For several months thereafter plaintiff was confined to the hospital, and she testified that she had no recollection whatever of executing any paper there. The insurance company paid the hospital bill and the bills of several doctors who treated plaintiff, the payments amounting in all to $937. Then, five months after the execution of the release, Dickey, the insurance adjuster, filled in the blank with the words "nine hundred thirty seven dollars."

This is not a case where one signs a paper without reading it and afterwards seeks to avoid it on the ground that, because of alleged fraudulent misrepresentations, it did not properly express the terms agreed upon. Had plaintiff read this release, or requested that it be read to her, it would not have afforded any information as

to the amount of the proposed settlement, because, as to that, the release was blank. Although there is some intimation in the testimony of Mr. and Mrs. Blazevich that they were of the impression the paper was only a "receipt" to acknowledge payment of the hospital and doctors' bills, and although it proved subsequently to be a release in full of all claims, there was nothing actually objectionable in it at the time plaintiff placed her mark upon it. The wrong asserted by her was perpetrated thereafter. The amount which Dickey should have inserted in the release depended wholly upon the oral agreement that had been entered into between him and Mr. and Mrs. Blazevich and communicated by Mrs. Blazevich to plaintiff at the time the release was signed. The terms of that oral agreement were provable by the same rules of evidence as in the case of any other oral contract or understanding, and it was for the jury to determine, as between the version given by Mr. and Mrs. Blazevich on the one hand and Dickey on the other, what the terms of the settlement really were. In short, there is not involved here the question of avoiding or reforming an instrument as it existed at the time of its execution, but rather of the authority of one later filling in a blank to insert a certain amount as the consideration.

If the release was in fact filled out subsequent to plaintiff's signature in a manner not justified by the understanding which had been entered into, then, since the insurance company did not pay plaintiff for her injuries, as, according to her version of the agreement, it was bound to do, she was justified in ignoring the release and suing in trespass on her original cause of action: *Schwartzfager v. Pittsburgh, Harmony, Butler & New Castle Railway Co.*, 238 Pa. 158, 85 A. 1115. Moreover, since the company paid no money to her but sent its checks to the hospital and the doctors, and plaintiff testified that she knew nothing of the actual making of such payments, she was not obliged, as a condition

precedent to instituting suit, to repay to the company what it had thus expended on her behalf: *Scanlon v. Pittsburgh Railways Co.,* 319 Pa. 477, 480, 181 A. 565, 567.

It may not be amiss to add that even had it been necessary for plaintiff to produce clear, precise and indubitable evidence to sustain her position in regard to the release, the testimony she presented would, in our opinion, have met the requisites of the standard as set forth in the recent case of *Aliquippa National Bank v. Harvey,* 340 Pa. 223, 232, 16 A. 2d 409, 414. What the learned trial judge mistakenly did was to weigh the testimony offered by both sides, and, acting as a jury, conclude that the facts were as claimed by defendant. In determining whether there is clear, precise and indubitable evidence in a case where such grade of evidence is required, it is only the testimony submitted by the party on whom such burden rests that, weighed in the light of the attendant circumstances, should be considered by the court; its contradiction by witnesses for the opposing party is for the consideration of the jury.* Here the evidence given by Mr. and Mrs. Blazevich compelled the submission of the case to that tribunal, nor was their testimony impaired by the fact that plaintiff herself had no recollection of signing the release at the hospital.

Judgment reversed and new trial granted.

---

* See *Honesdale Glass Co. v. Storms,* 125 Pa. 268, 279, 17 A. 347, 348; *Gibson v. Western New York and Pennsylvania R. R. Co.,* 164 Pa. 142, 150, 30 A. 308, 310; *Spritzer v. Pennsylvania R. R. Co.,* 226 Pa. 166, 169, 75 A. 256, 257; *Gordon v. Great Atlantic & Pacific Tea Co.,* 243 Pa. 330, 335, 90 A. 78, 79, 80; *Lindemann v. Pittsburgh Railways Co.,* 251 Pa. 489, 491, 96 A. 1085, 1086; *Vanormer v. Osborn Machine Co.,* 255 Pa. 47, 51, 52, 99 A. 161, 162, 163; *Broida v. Travelers Insurance Co.,* 316 Pa. 444, 448, 175 A. 492, 494.