754 F.2d 110
 John P. ROCCO and Antoinette Rocco, his wife, Appellants in 83-1043,
v.
JOHNS-MANVILLE CORP.; Johns-Manville Sales Corporation;
Raybestos-Manhattan, Inc.; Owens-Corning Fiberglass
Corporation; Owens-Illinois Glass Company; Pittsburgh
Corning Corporation; GAF Corporation; Celotex Corporation;
Unarco Industries, Inc.; H.K. Porter Co., Inc.; Southern
Asbestos Company; Eagle- Pitcher Industries, Inc.; Amatex
Corporation; Pacor, Inc.; Keene Corporation; Garlock,
Inc.; Glen Alden, Inc.; Rapid American Corporation, Inc.
v.
ASTEN-HILL MANUFACTURING CO., INC.; Certain Teed Corp.;
Forty-Eight Insulators, Inc.; Fibreboard
Corporation; Nicolet Industries.
Appeal of PITTSBURGH CORNING CORP., in 83-1044.
 Nos. 83-1043, 83-1044.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 15, 1984.
Decided Jan. 25, 1985.
Rehearing and Rehearing En Banc Denied March 1 and April 11, 1985.
 
 Marc P. Weingarten (argued), Michael J. Witt, Greitzer & Locks, Philadelphia, Pa., for appellants John and Antoinette Rocco.
 John A. Fitzpatrick (argued), Joseph P. Ryan, Edward J. David, Curran, Mylotte, David & Fitzpatrick, Philadelphia, Pa., for appellant Pittsburgh Corning Corp.
 Before ADAMS, GIBBONS, and WEIS, Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 This asbestos diversity case presents several issues under the Pennsylvania Joint Tortfeasors Act. We hold that payments made to plaintiffs by defendants who are not determined to be joint tortfeasors do not diminish the damages plaintiffs are entitled to recover. However, a release in favor of a joint tortfeasor who files a petition in bankruptcy before paying the agreed settlement amount does act to reduce the plaintiffs' verdict pro rata. We hold further that Pennsylvania delay damages may be assessed against a non-settling defendant only on its pro rata share of a verdict. Because claims against a potential joint tortfeasor remain open in the district court we will affirm in part and remand.
 
 
 2
 The plaintiffs' complaint named eighteen defendants. At various times, up until closing argument to the jury, settlements were reached with a number of them. Plaintiffs went to the jury on their claims against defendants Pittsburgh Corning and Johns-Manville, recovering verdicts against both. The jury also determined that six of the settling defendants contributed to the plaintiffs' injuries.
 
 
 3
 After denying post-trial motions for judgment n.o.v. and new trial, the district court reduced the verdicts because of pro rata releases executed by plaintiffs and added delay damages as provided by Pennsylvania state practice. Plaintiffs and defendant, Pittsburgh Corning, have appealed.
 
 
 4
 Plaintiff John Rocco was employed at the New York and the Philadelphia Naval shipyards from 1943 to 1981. During that time, he was exposed to asbestos products and dust which led to asbestosis. The complaint against the defendants, manufacturers and suppliers of asbestos products, asserted a claim for damages based on strict liability, specifically failure to warn. Some of the defendants filed cross-claims and third-party actions against other manufacturers. At some point before trial, the plaintiffs' claims and defense cross-claims against Keene Corporation, one of the original defendants, were severed and assigned to another judge for disposition.[1]
 
 
 5
 Before the case reached the jury, plaintiffs settled with most of the defendants and signed pro rata releases. Because differing releases and procedures were used, the legal effect to be given these settlements varies.
 
 
 6
 The jurors determined that the conduct of Johns-Manville and Pittsburgh Corning was a proximate cause of the plaintiffs' injuries and awarded $500,000 to John Rocco and $50,000 to his wife Antoinette. In answering special interrogatories submitted in conjunction with the defendants' cross-claims, the jury found that six of the settling defendants had also proximately caused the plaintiffs' injury. The defendants in that category will be referred to hereafter as Group C. The jurors were not told that other companies, designated here as Group A and B, had been defendants and that they too had settled.
 
 
 7
 The post-trial proceedings were complex. Johns-Manville and Pittsburgh Corning moved for judgments n.o.v. and new trial based on insufficiency of the evidence and excessiveness of the verdicts. Plaintiffs filed motions for directed verdict nunc pro tunc and for judgment n.o.v. on behalf of three of the Group C cross-claim defendants, alleging that there was insufficient evidence to support the jury's findings against them. Plaintiffs also moved to add delay damages to the verdict, pursuant to Pennsylvania Rule of Civil Procedure 238. Johns-Manville and Pittsburgh Corning moved to mold the verdict because plaintiffs had signed pro rata releases that would reduce the amount of the verdicts.
 
 
 8
 On September 9, 1982, the district court filed an opinion and order denying the motions for judgment n.o.v. and new trial. The motions to mold the verdicts were granted in part and denied in part. As part of the order, plaintiffs were directed to furnish the court with the amounts paid by the Group C defendants for the pro rata releases. The plaintiffs' motion to add delay damages was granted, but entry of the amounts due was reserved until the court modified the verdicts. Johns-Manville and Pittsburgh Corning both appealed the September order.[2] Later, the district court conducted a hearing and on December 15, 1982, filed another memorandum and order. The court computed the delay damages at 10 percent per year on John and Antoinette Rocco's awards. The court then proceeded to reduce the verdicts by giving effect to the various settlements.
 
 
 9
 The court divided the settling defendants into three categories. Group A was composed of eight defendants who had paid a total of $47,500.[3] The culpability of these defendants had not been submitted to the jury, and the releases signed by plaintiffs did not acknowledge these defendants to be joint tortfeasors. However, the court decided that "on principles of equity and fairness," the amount paid by the Group A defendants should be deducted from the verdicts to prevent double recovery by plaintiffs.
 
 
 10
 Group B was composed of one defendant, Owens Corning Fiberglass. It was acknowledged to be a joint tortfeasor by the terms of a release signed by plaintiffs and reciting a consideration of $25,000.
 
 
 11
 The third group was the Class C defendants--those who were adjudicated joint tortfeasors by the jury. The six companies in this group had paid a total of $65,750.[4]
 
 
 12
 After classifying the settling defendants, the district court concluded that there were nine joint tortfeasors; Johns-Manville, Pittsburgh Corning, and the Group B and C defendants. That being so, the court held that a pro rata share of each defendant was one-ninth. Accordingly, Johns-Manville and Pittsburgh Corning were jointly and severally liable for two-ninths of the total verdict.
 
 
 13
 After performing the various calculations, the court entered judgment in favor of plaintiff John Rocco against Johns-Manville and Pittsburgh Corning, jointly and severally in the amount of $127,482.63. Judgment was entered in favor of Antoinette in the amount of $12,747.21.[5] The plaintiffs' claims against the remaining defendants, with the exception of the severed count against Keene Corporation, were dismissed.
 
 
 14
 Plaintiffs and Pittsburgh Corning appealed the December judgment but Johns-Manville did not. After the appeals had been taken, the parties secured an order from the district court, stating that the December order was final as to all parties except Keene Corporation. Therefore, only the appeals of plaintiffs and Pittsburgh Corning from the December order are currently before us. Even though obtained after the appeal had been filed, the 54(b) certification permits us to reach the merits of these appeals. See Feather v. United Mine Workers of America, 711 F.2d 530 (3d Cir.1983); Cape May Greene, Inc. v. Warren, 698 F.2d 179 (3d Cir.1983); Tilden Financial Corporation v. Palo Tire Service, Inc., 596 F.2d 604 (3d Cir.1979).
 
 I.
 
 15
 The district court concluded that sufficient evidence supported the jury's finding that asbestos manufactured by Pittsburgh Corning was a factor causing the plaintiffs' injury. Although the evidence was not overwhelming, there was enough for the jury to find that Unibestos, a product manufactured by Pittsburgh Corning, was used at the shipyards where plaintiff had worked. Several witnesses testified that the product was manufactured by Pittsburgh Corning and had been observed at the job sites. We find no reversible error in the admission of this evidence or in the denial of the Pittsburgh Corning's motions for a new trial and judgment n.o.v. on the ground of insufficient evidence.
 
 
 16
 The verdict in this case was very generous, but the district court did not find it so excessive as to shock the conscience of the court. Our scope of review is narrow, and we must affirm the jury's damage award unless it is "so grossly excessive as to shock the judicial conscience." Black v. Stephens, 662 F.2d 181 (3d Cir.1981), cert. denied, 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982); Edynak v. Atlantic Shipping, Inc., 562 F.2d 215 (3d Cir.1977), cert. denied, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978). On this record we cannot say that the district court abused its discretion in the denial of Pittsburgh Corning's motion for a new trial. See Thomas v. E.J. Korvette, Inc., 476 F.2d 471 (3d Cir.1973).
 
 
 17
 The plaintiffs' contention that the district court should have permitted them to prevail on the motion for a directed verdict nunc pro tunc on behalf of several of the Class C defendants must also be rejected. The district court noted that an affected party must file a motion for a directed verdict at the close of all the evidence as a prerequisite to consideration of a motion for judgment n.o.v., Fed.R.Civ.P. 50. Here, the motion was submitted some time after the verdict had been entered and was clearly untimely.
 
 
 18
 There is no authority that would justify a nunc pro tunc procedure in the circumstances in this case. Indeed to allow filing of a motion for a directed verdict after submission of the case to the jury would frustrate the very purpose of Rule 50--to preserve an objection to the sufficiency of the evidence. See Mallick v. International Brotherhood of Elec. Workers, 644 F.2d 228 (3d Cir.1981); DeMarines v. KLM Royal Dutch Airlines, 580 F.2d 1193, 1195 n. 4 (3d Cir.1978); see also 5A Moore, Moore's Federal Practice paragraphs 50.02-50.05 (2d ed. 1984); 9 Wright and Miller, Federal Practice and Procedure Secs. 2533-40 (1971).
 
 
 19
 Moreover, even though the joint tortfeasor issues were tried under some unusual procedures, we have been directed to no authority giving plaintiffs standing to file a motion on behalf of a defendant excused from attendance at the trial by all parties after a negotiated settlement. The district court properly denied the plaintiffs' motion.
 
 II.
 A.
 
 20
 This brings us to a consideration of the more convoluted issues in this case, the molding of the verdicts. As a preliminary matter, it is necessary to review the workings of the Pennsylvania Joint Tortfeasors Act which provides the rule of decision in this diversity case.
 
 
 21
 The Pennsylvania statute provides that the release of one joint tortfeasor does not release others unless so agreed. It does, however, reduce the amount the injured party may recover from nonreleased joint tortfeasors to the extent of a pro rata share or the amount paid for the release, whichever is greater. Pennsylvania Uniform Contribution Among Tortfeasors Act, 42 Pa.Cons.Stat.Ann. Secs. 8321-27 (Purdon 1982); Sochanski v. Sears, Roebuck & Co., 689 F.2d 45 (3d Cir.1982); Mong v. Hershberger, 200 Pa.Super. 68, 186 A.2d 427 (1962).
 
 
 22
 For the Act to apply, it is necessary to establish that those allegedly culpable are joint tortfeasors. That may be accomplished through adjudication in the suit by the injured party. A defendant has a right to require a codefendant settling on a pro rata release to remain in the case through trial and verdict in order to establish joint tortfeasor status. Davis v. Miller, 385 Pa. 348, 123 A.2d 422 (1956). See Slaughter v. Pennsylvania X-Ray Corp., 638 F.2d 639 (3d Cir.1981). Joint liability may also be established in a separate contribution suit. Swartz v. Sunderland, 403 Pa. 222, 169 A.2d 289 (1961); Slaughter, 638 F.2d at 644-45.
 
 
 23
 Adjudication is, however, not the only way in which joint tortfeasor status may be ascertained. In Mazer v. Security Insurance Group, 507 F.2d 1338, 1342 (3d Cir.1975), we pointed out that it is not always necessary that the settling party be joined in the lawsuit, if "by some reliable means there was a determination, either judicially or by plaintiff's concession, that the settling party was a joint tortfeasor." In Mazer the determination was made from facts adjudicated in a prior suit in which an employee of the alleged joint tortfeasor was a party.
 
 
 24
 Griffin v. United States, 500 F.2d 1059 (3d Cir.1974), held that an injured party could concede in a release that the settling defendant was a joint tortfeasor. In reaching that conclusion, Griffin emphasized the interests of the injured party. Under Pennsylvania law, if the released party is not a joint tortfeasor, he is considered a volunteer. In that circumstance, the amount paid for the release is not deducted from the recovery against a nonreleased party.
 
 
 25
 The district court found that the Group A defendants were volunteers because their joint tortfeasor status was not established. Nonetheless, relying on Dobbins v. Crain Brothers, Inc., 567 F.2d 559 (3d Cir.1977), the court concluded that the consideration paid by those defendants should be deducted from the verdict to prevent unjust enrichment. Although that rationale is not lacking in appeal, it is contrary to Pennsylvania law. In Davis v. Miller, the Supreme Court of Pennsylvania pointed out that if a settling defendant "was not a joint tortfeasor, the releases given her by plaintiffs would not enure to [the codefendants] benefit." 385 Pa. at 352, 123 A.2d at 424.
 
 
 26
 We have read Davis v. Miller as establishing the principle that if the settling party is not a tortfeasor, his payment is that of a volunteer and does not support a claim for contribution or pro rata reduction. See Slaughter, 638 F.2d at 642; Castillo v. Roger Construction Co., 560 F.2d 1146, 1152 (3d Cir.1977); Mazer v. Security Insurance Co., 507 F.2d at 1342; Griffin v. United States, 500 F.2d at 1072. Pittsburgh Corning's reliance upon Dobbins v. Crain Brothers, Inc., 567 F.2d 559 (3d Cir.1977), is misplaced because that case was decided under the Jones Act, 46 U.S.C. Sec. 688 (1970), not Pennsylvania law, and the Joint Tortfeasors Act was not pertinent to the decision.
 
 
 27
 One of the problems with this case is that the parties employed somewhat unusual procedures in connection with the settlement of the Group A defendants. One would have expected the nonsettling defendants to either have requested substitution of Griffin-type releases or judicial determination of liability. The nonsettling defendants took no action, apparently acquiescing in the settling parties' absence from the trial. That failure to act may be considered a waiver of any benefit from the Group A releases or the amounts paid for them. The amount paid by Group A defendants should not have been deducted from the verdicts, because as to them there was no adjudication of liability nor had they executed joint tortfeasor releases.[6]
 
 B.
 
 28
 As noted earlier, the district court identified a total of nine joint tortfeasors, and therefore Johns-Manville and Pittsburgh Corning are each responsible for one-ninth of the verdict. That apportionment, so far as it went, was correct. It failed, however, to recognize that the claims against Keene Corporation unfortunately had been severed and must still be adjudicated. Until it is determined whether Keene is a joint tortfeasor, either by a judicial finding, a Griffin-type release or other stipulation by the affected parties, it is not possible to determine whether Johns-Manville and Pittsburgh Corning are each liable for one-ninth or some other portion of the verdict.
 
 
 29
 The parties have not informed us whether Keene Corporation has agreed to be bound by the verdict of the jury as to the damages set in this case; whether collateral estoppel may be invoked on that issue; or whether the remaining litigation will be solely for contribution by Pittsburgh Corning and Johns-Manville. See, e.g., Swartz v. Sunderland, 403 Pa. 222, 169 A.2d 289 (1961). Therefore, we cannot decide at this time what the apportionment will be if Keene should be found to be culpable.
 
 
 30
 The uncertainty surrounding the pending claims and our inability to posit alternative resolutions of the apportionment ratio at this point demonstrate the undesirability of the severance that took place in this case. Our ruling now must be limited to holding that Pittsburgh Corning and Johns-Manville will be jointly and severally liable for two-ninths of the verdict if Keene is found not liable. If, however, Keene is determined to be a joint tortfeasor, then a redetermination of respective liabilities must be undertaken.
 
 C.
 
 31
 Another complication introduced in the post-verdict proceedings was that Unarco, one of the Group C defendants, filed for reorganization under Chapter 11. Unarco participated throughout the trial until all of the evidence was concluded. At that point, it agreed on a settlement with plaintiffs for $15,000. Plaintiffs then withdrew their claim against Unarco from jury consideration and restricted their closing arguments to the evidence against Johns-Manville and Pittsburgh Corning. In deciding the cross-claims, the jury by interrogatory, found that Unarco had contributed to the plaintiffs' injury.
 
 
 32
 On July 29, 1982, six weeks after the verdict was entered and about three weeks after plaintiffs signed a release, Unarco filed its petition in bankruptcy. Because Unarco had not paid the $15,000, plaintiffs maintain that through this action the company "reneged" on its settlement. The district court ruled that Unarco's bankruptcy did not alter its joint tortfeasor status nor the rights of Johns-Manville and Pittsburgh Corning to pro rata reduction of the verdict because of Unarco's settlement.
 
 
 33
 Plaintiffs contend that because Unarco breached the settlement they have the option of enforcing the agreement or treating it as rescinded and retaining the original cause of action. See Lucas v. Gibson, 341 Pa. 427, 19 A.2d 395 (1941); Zager v. Gubernick, 205 Pa.Super. 168, 208 A.2d 45 (1965). While that argument may hold true in most circumstances, it is not applicable here where plaintiffs have not argued that breach occurred before the Chapter 11 petition was filed and did not take any steps to rescind before bankruptcy intervened.
 
 
 34
 In the district court plaintiffs took the position that filing of a bankruptcy petition gave them the option of voiding their contract. No authority was cited for that position in the district court nor on appeal.[7]
 
 
 35
 It is clear that if plaintiffs rescind the settlement, a judgment for contribution in favor of Pittsburgh Corning and Johns-Manville would be entered against Unarco since it would no longer be insulated by a pro rata release. Thus, the contribution judgment for a sum in excess of $50,000 would be substituted for Unarco's obligation under the release to pay $15,000. Obviously, Unarco's creditors and the bankrupt estate would be prejudiced by that development. In these circumstances, plaintiffs presented no grounds entitling them to unilaterally rescind the agreement differing from those of any other creditor who has performed his contract and, hence, is entitled to payment from a bankrupt.
 
 
 36
 In any event, plaintiffs at least should have applied to the bankruptcy court for modification or rescission of their contract with Unarco. Insofar as the record before us appears, they have not done so. Consequently, in the absence of any ruling to the contrary by the bankruptcy court, the district court correctly determined that the pro rata release of Unarco was valid. That being so, under the provisions of the Pennsylvania Joint Tortfeasor's Act, and the terms of the release itself, the claims of plaintiffs must be reduced by Unarco's pro rata share.
 
 D.
 
 37
 Pennsylvania Procedural Rule 238 provides that in tort cases involving personal injury or property damage, if a defendant fails to make a written offer of at least 80 percent of the verdict, the court shall add delay damages of 10 percent per annum.[8] Although the state rule has been characterized as procedural by the Pennsylvania Supreme Court and thus within its rulemaking authority, see Laudenberger v. Port Authority, 496 Pa. 52, 436 A.2d 147 (1981), we have concluded that under Erie standards the rule is substantive. Jarvis v. Johnson, 668 F.2d 740 (3d Cir.1982). Therefore, we have approved delay damages in Pennsylvania diversity cases.
 
 
 38
 Because neither Pittsburgh Corning nor Johns-Manville made settlement offers, the district court properly allowed delay damages. To arrive at the amount due by each defendant, the court calculated the amount due on the total verdicts, then reduced that sum by the amount paid by the Class A defendants, and finally divided the result by one-ninth. Implicit in the district court's calculation is that Pittsburgh Corning and Johns-Manville were liable for delay damages only on their pro rata share of the verdict.[9]
 
 
 39
 Plaintiffs contend that the court erred in failing to award them delay damages based on the total verdict. In effect, plaintiffs ask for delay damages based on the shares of the verdict attributable to those defendants who had settled, as well as those who did not. Plaintiffs cite no controlling Pennsylvania case to support their position, and we reject that contention as a distortion of the delay damage rule.
 
 
 40
 The Pennsylvania Supreme Court has stated the primary purpose of the rule is to encourage settlements. Laudenberger, 496 Pa. at 59, 436 A.2d at 151. As a secondary benefit, the plaintiff is awarded compensation for the delay in receiving funds to which he was entitled. It would be anomalous to award a plaintiff delay damages on money already received from the settling defendants. This would clearly represent a windfall not supported by any reasonable interpretation of the rule.
 
 
 41
 No Pennsylvania appellate court supports the plaintiffs' position, and in Richardson v. LaBuz, 81 Pa.Commw. 436, 474 A.2d 1181 (1984), the Pennsylvania Commonwealth Court intimated a contrary result. In that case the comparative negligence doctrine applied and in assessing delay damages the court concluded that an offer made by one of several codefendants should be measured against his proportionate share, rather than the total amount of the verdict. The court said that a contrary interpretation of the rule would be "unrealistic" and "an absurd result." Id. at 459, 474 A.2d at 1196.
 
 
 42
 We agree with the reasoning of the Commonwealth Court. The purpose of encouraging settlements is not furthered by penalizing a defendant for more than his proportionate share of the ultimate liability. The rule is already weighted heavily in favor of plaintiffs. As Justice Roberts pointed out in his dissent in Laudenberger, the unfairness of the rule
 
 
 43
 "is further compounded by its imposition of duties and sanctions only upon defendants and not upon plaintiffs ... the Rule should not only require defendants to make reasonable settlement offers, but should also require plaintiffs to make reasonable demands. Failure of either party to make a reasonable effort to settle should result in the imposition of similar sanctions."
 
 
 44
 496 Pa. at 78, 436 A.2d at 160. Following the Rocco's interpretation would increase the unfairness of the rule beyond that lamented by Justice Roberts.
 
 
 45
 Plaintiffs also cited Lavin v. Mylecraine, 307 Pa.Super. 564, 453 A.2d 1031 (1982), in support of their position. In Lavin, the plaintiffs accepted from one defendant an offer that was more than 80 percent of the verdict later rendered by a jury which found both defendants negligent. A panel of the Superior Court awarded delay damages against the nonsettling defendant. The opinion does not state whether delay damages were assessed on the full amount of the verdict or on the nonsettling defendants' proportionate share. Absent any discussion on which method of calculation is proper or on the wording of the rule which apparently precludes delay damages when the verdict is not more than 125 percent of the amount plaintiff has previously received, Lavin cannot guide us in making a proper determination.
 
 
 46
 As we read the rule, if a plaintiff has accepted an offer of at least eighty percent of the ultimate verdict, he is not eligible for delay damages. Nothing in the rule specifies whether that amount must be received from one or more defendants. An even-handed application requires that the plaintiff accept a reasonable settlement and if he fails to terminate the litigation when one is tendered, it would appear that no delay damages are due. Moreover, the familiar principle that a plaintiff is entitled to but one satisfaction is apt here as well.
 
 
 47
 We note there is a dearth of state appellate law on point in Pennsylvania. It appears to us, however, that the Pennsylvania Supreme Court would interpret Rule 238 in a manner consistent with the district court decision. We therefore hold that delay damages may be assessed against a nonsettling defendant for only its proportionate share of the verdict in cases where the amount already received by plaintiffs from settling joint tortfeasors does not exceed 80 percent of the verdict.III.
 
 
 48
 As noted earlier, we cannot compute the amount of the judgment which may be entered jointly and severally against Johns-Manville and Pittsburgh Corning because it will depend on the outcome of the claims against Keene. However, insofar as they establish the liability of Pittsburgh Corning, Johns-Manville, and the Group C settling defendants, the judgments will be affirmed.[10] Accordingly, the orders of the district court denying the motions for new trial and judgment n.o.v. will be affirmed. The case will be remanded for further proceedings consistent with this opinion.
 
 GIBBONS, Circuit Judge, dissenting:
 
 49
 I join in the results announced in all parts of the opinion of the court except Part II C. I do not believe that the Pennsylvania Supreme Court would, at the expense of the plaintiff, allow one joint tortfeasor to escape the risk of another joint tortfeasor's insolvency.
 
 
 50
 Pennsylvania law provides plaintiffs with two options in the event of default by a settling defendant: they may either sue to enforce the settlement agreement, or sue on the underlying cause of action. Zager v. Gubernick, 205 Pa.Super. 168, 173-74, 208 A.2d 45, 49 (1965); Lucas v. Gibson, 341 Pa. 427, 431, 19 A.2d 395, 397 (1941); Schwartzfager v. Pittsburgh H., B., & N.C. Ry., 238 Pa. 158, 85 A. 1115 (1913). The opinion of the court acknowledges this rule, but holds that it is inapplicable where the default occurs because a bankruptcy intervened.
 
 
 51
 Nothing in the Bankruptcy Code provides that the victim is deprived of the option to disregard a default and rely upon the underlying cause of action. Certainly nothing in the Bankruptcy Code provides that it inures to the benefit of non-bankrupt joint tortfeasors. Had Unarco's bankruptcy occurred prior to the settlement the Roccos would have been entitled to proceed against and recover in full from the remaining joint tortfeasors. Had a judgment been entered against Unarco prior to its bankruptcy petition, the risk that Unarco would not contribute its share would have fallen on the other joint tortfeasors, not on the victim. Where, under Pennsylvania law the victim has an unquestioned option to disregard a settlement which has been defaulted upon, and to sue on the underlying tort, the rule should be that the risk of default rests on the other joint tortfeasors.
 
 
 52
 I am confident that the Pennsylvania Supreme Court would so hold, for no other result is consistent with the equities of the situation. Unarco's default on the settlement agreement does not unduly prejudice the nonsettling defendants. That default simply takes the settlement outside the purview of the Pennsylvania Joint Tortfeasors Act, because under Pennsylvania law the settlement is voidable at the victim's option. Thus the nonsettling defendants still have a cause of action against Unarco for contribution. To some extent that cause of action is illusory because of the automatic stay provisions of the Bankruptcy Code. Pennsylvania law provides, however, that a joint tortfeasor is liable for the entire verdict, without regard to his ability to collect contribution from other joint tortfeasors.
 
 
 53
 Perhaps Congress could, under its bankruptcy clause powers, preempt Pennsylvania law by depriving plaintiffs who have settled with parties that later file for bankruptcy of the option which Pennsylvania law affords. Neither the parties nor the majority point to any federal law to that effect. Certainly 11 U.S.C. Sec. 365 (1982), to which the majority refers, has nothing to do with this case. It gives the trustee an option to affirm or reject executory contracts. It does not, however, enlarge the contract rights of the debtor under state law. If the non-bankrupt party to a contract has, under state law, a right to rescind, that right is unaffected by section 365. Indeed section 365(b)(1) provides explicitly that "[i]f there has been a default in an executory contract ... the trustee may not assume such contract ... unless ... the trustee--(A) cures ... such default; (B) compensates ... for any actual pecuniary loss to such party resulting from such default; and (C) provides adequate assurance of future performance under such contract...." The joint tortfeasors do not suggest that the conditions specified in section 365 have been satisfied. So far as this record discloses, Unarco's trustee in bankruptcy could not affirm the executory settlement agreement. Thus nothing in the Bankruptcy Code supports the majority's holding that Pennsylvania law, which allows the victim to avoid the settlement agreement and sue on the underlying cause of action, is preempted by federal bankruptcy law.
 
 
 54
 I would hold, therefore, that the Roccos' claims should not have been reduced by the amount of the unpaid stated consideration in a release, which is voidable under Pennsylvania law despite Unarco's bankruptcy.
 
 
 
 [1]
 The claims against Keene Corporation were severed because of judicial disqualification under 28 U.S.C. Sec. 455(b)(5)(ii)(1976)
 
 
 [2]
 Johns-Manville's appeal is docketed at No. 82-1624. That appeal was stayed on April 27, 1983, following the company's filing of a Chapter 11 Reorganization petition. Pittsburgh Corning's appeal was docketed at No. 82-1652. It was later dismissed for failure to prosecute
 
 
 [3]
 Group A defendants and the amounts paid are as follows:
 Amatex Corporation, $ 7,500.
Asten-Hill Manufacturing Co., Inc., 2,000.
Forty-eight Insulations, Inc., 2,000.
GAF Corporation, 3,500.
Nicolet Industries, Inc. 2,500.
Owens-Illinois Glass Coporation, 7,500.
Pacor, Inc., 15,000.
Raybestos-Manhattan, Inc., 7,500.
 TOTAL $47,500.
 
 
 [4]
 The Class C defendants consisted of the following:
 Celotex Corporation $17,500.
Eagle-Picher Industries, Inc. 20,000.
Fibreboard Corporation 2,000.
Garlock, Inc. 2,500.
H.K. Porter Co., Inc. 8,750.
Unarco Industries, Inc. 15,000.
 TOTAL $65,750.
 
 
 [5]
 The judgment was actually entered against three defendants: Johns-Manville Corporation, Johns-Manville Sales Corporation, and Pittsburgh Corning Corporation. The parties to this appeal have treated Johns-Manville Corporation and Johns-Manville Sales Corporation as one entity, and we will do likewise
 
 
 [6]
 The releases signed by plaintiffs in favor of the Group A defendants contained a denial of liability by the releasees. See Castillo v. Roger Construction Co., 560 F.2d at 1152. The releases also provided that any other organization claimed to be liable "shall not be entitled to a satisfaction or reduction or pro rata reduction of the damages we are claiming against them by reason of the judgment herein, unless it is adjudicated that releasees are Joint Tortfeasors with said person or organization."
 Although plaintiffs signed releases with similar language in favor of Owens-Corning Fiberglass Corporation, the only group B defendant, counsel for the two parties stipulated in advance of trial that the release should be "treated as if it were a 'Griffin' release" and that the verdict be reduced pro rata "whether or not the released party herein was in fact a joint tortfeasor."
 
 
 [7]
 If the release was construed as an executory contract, see Schwartzfager v. Pittsburgh, H., B. & N.C. Ry. Co., 238 Pa. 158, 85 A. 1115 (1913), the result would not be different here. 11 U.S.C. Sec. 365 (1982) provides that executory contracts may be affirmed or rejected by the trustee. See 2 COLLIER ON BANKRUPTCY p 365 (15th ed. 1984). The release, however, having been signed by plaintiffs and the claims against Unarco dismissed, is not an executory contract under Sec. 365. Moreover, Sec. 365 provides that entry into bankruptcy does not act as a breach of an executory contract
 
 
 [8]
 Rule 238 provides:
 "(a) Except as provided in subdivision (e), in an action seeking monetary relief for bodily injury, death or property damage, or any combination thereof, the court ... shall
 (1) add to the amount of compensatory damages in the award of the arbitrators, in the verdict of a jury, or in the court's decision in a nonjury trial, damages for delay at ten (10) percent per annum, not compounded, which shall become part of the award, verdict or decision:
 * * *
 (c) Except as provided in subdivision (e), damages for delay shall be added to the award, verdict or decision against all defendants found liable, no matter when joined in the action.
 * * *
 (e) If a defendant at any time prior to trial makes a written offer of settlement in a specified sum with prompt cash payment to the plaintiff, and continues that offer in effect until commencement of trial, but the offer is not accepted and the plaintiff does not recover by award, verdict or decision, exclusive of damages for delay, more than 125 percent of the offer, the court or the arbitrators shall not award damages for delay for the period after the date the offer was made."
 See Laudenberger, 496 Pa. 52, 59-60, 436 A.2d 147, 151.
 
 
 [9]
 We think it might be simpler to first calculate the pro rata share of each defendant and then apply the delay damage factor to make clear the formula that is followed in cases of this nature. This method would be particularly helpful in cases where differing degrees of fault were assessed against the defendants in cases where the comparative negligence statute, 42 Pa.Cons.Stat.Ann. Sec. 7102 (Purdon 1982), is applicable
 
 
 [10]
 It is clear that plaintiffs are entitled to recover from Pittsburgh Corning on its joint and several liability, although the amount cannot be determined at this time. Nevertheless, we believe that without further delay, Pittsburgh Corning should pay to plaintiffs or place in escrow at least the minimum amount for which it may ultimately be held liable. We suggest that the district court schedule a conference with counsel to make such arrangements